Farrar v. Heinrich.

FARRAR *et al.*, *Appellants*, v. HEINRICH, *alias* HENRY *et al.*

86   521
45a  641
86   521
109  335
86   521
119  301
86   521
145  409
86   521
161  287

1. **Ejectment** : TITLE.  The elder title when the better one must prevail in an action of ejectment.

2. **Title by Adverse Possession.**  An actual, adverse, open, and continuous possession of land under a claim and color of right from 1836 to 1860 was sufficient, not only to bar recovery by those claiming under an elder title, but conferred title upon those claiming under such adverse possession.

3. **Trespass** : ADVERSE POSSESSION.  When both parties claim title by possession under color of title, the origin of each being an act of trespass, the one being a trespass on the constructive possession and the other a trespass on the actual possession under the later title, the same rule of law as to the title passing by adverse possession applies to each.

4. **Possession of Tenant** : SECOND LEASE.  The possession of a tenant is the possession of his lessor, and the fact that the parties claiming the adverse title without the knowledge of such lessor prevailed on tenant while so in possession under the first lease, to accept a lease from them, cannot affect the possession of such first lessor.

5. ——— : ———.  The fact that the second lessors may have made their lease under the mistaken belief that the tenant was a squatter and in ignorance of the existence of the first lease, cannot affect the rights of the first lessor.

6. ——— : ———.  If neither party in fact knew, nor had reason to suspect the existence of the lease by the other, and although both acted in good faith in making their respective leases, still such facts cannot help the second lessor.  In such circumstances the familiar doctrine and duty of the court is not to interfere, but to leave the parties as it found them.

---

Farrar v. Heinrich.

---

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*C. & C. E. Gibson* for appellants.

(1)   It is the settled law of this state that an adverse possession of ten years will not only bar a recovery by the owner, but will confer his title upon the adverse possessor. *Merchants' Bank v. Evans*, 51 Mo. 335; *Shepley v. Cowen*, 52 Mo. 559 ; *Barry v. Otto*, 56 Mo. 177 ; *Ridgeway v. Holliday*, 59 Mo. 444.   (2) The title to a common field lot, under the act of 1812, emanated from the government upon the passage of the act (*Glasgow v. Lindell Heirs*, 50 Mo. 60), and the limitation began to run from that time in favor of an adverse possession. *Langlois v. Crawford*, 59 Mo. 456. Hence, it follows that the adverse possession of plaintiffs' grantors from 1836 to 1860 conveyed to them the title set up by the defendants, based upon a confirmation by the act of 1812.   Therefore, the plaintiffs' grantors had a perfect title to the land in dispute, and were the owners in fee thereof, and in actual possession under fence, at the time the defendants took forcible possession of the same in 1861.   (3) The title to the premises never vested in Heinrich, for he never was in possession under claim of ownership, or with the interest to assert an adverse title in himself. *Bowman v. Lee*, 48 Mo. 335 ; *Bradley v. West*, 60 Mo. 33 ; *Knowlton v. Smith*, 36 Mo. 507 ; *St. Louis University v. McCune*, 28 Mo. 481 ; *Kincaid v. Dormey*, 47 Mo. 337 ; *Tamm v. Kellogg*, 49 Mo. 118. (4) The statute of limitations would not run in defendants' favor from 1860 or 1861, for the reason that there was nothing to apprise plaintiffs or their grantors that Heinrich was the tenant of his co-defendants, and as such, holding adversely to plaintiffs.   Possession of

land of itself does not constitute title, nor is it necessary evidence of title. Possession of itself evidences only present occupancy by right. *Blaisdell v. Martin,* 9 N. H. 255; *Richard v. Williams,* 7 Wheat. 105; *Lincoln v. Thompson,* 75 Mo. 613. Heinrich's possession only indicated to plaintiffs' grantors that he was the present occupant, and they had a right to treat him as such and were not called upon to speculate whether he held any kind of relations with those who were perfect strangers to them. The bar of the statute of limitations cannot be invoked, unless the facts constituting the adverse possession are sufficiently patent to apprise the owner that his property is adversely claimed. *Fugate v. Pierce,* 49 Mo. 441; *Myler v. Hughes,* 60 Mo. 115; *Leeper v. Baker,* 68 Mo. 400; *Turner v. Hall,* 60 Mo. 277; *Key v. Jennings,* 66 Mo. 356; *Norfleet v. Hutchinson,* 68 Mo. 597; *Alexander v. Polk,* 39 Miss. 755; 3 Washb. R. P. (4 Ed.) 141; Tyler on Ejectment, 909; 4 Mass. 419; *Benge v. Creagh,* 21 Ala. 156; *Brown v. Cockerill,* 33 Ala. 47; *School, etc., v. Lynch,* 33 Conn. 334. The statute of limitations was never designed to apply to a case of this nature. Its object is intended only against those who sleep on their rights, but it was never designed to deprive an owner of his land, when he could not, by the utmost diligence, discover from the marks of adverse possession that others had any claims to it. (5) The point whether Heinrich, by his lease to the plaintiffs, became their tenant is totally foreign to the question, whether the nature and quality of the defendants' possession was such as to confer on them a title by the statute of limitations. Though Heinrich never became the tenant of plaintiffs and never held possession for them, this is no decision that the possession which the defendants held was actual, visible, and notorious, or such a possession as is required by the statute of limitations. The right of plaintiffs to recover against Heinrich cannot be seriously disputed. It would

be a plain fraud for him to take a lease for the expressed and avowed purpose of turning the possession over to plaintiffs' grantors, and in every way holding possession under and for them, and then to turn up a secret lease to his co-defendants, drawn like a trump card from under the table, and claim the title to the land ; such claim must be rejected, although it is a trump.   The co-defendants are in no better position than Heinrich.

*D. T. Jewett* for respondents.

(1)   The lower court found that Polk and his associates, in good faith claiming title to the land, took possession of the same in 1860, where it crossed the New Madrid Survey, in the name of Genereaux, and fenced it up separately from that survey, that he and his associates put the tenant Heinrich on it under a lease, and that Heinrich went on as tenant of Polk and others, in good faith, and not as a trespasser.   The court, as trier of the facts, having thus found, this court is concluded by such finding in view of the fact that there was evidence to justify it.   Attornment means the abandonment of one landlord and the accepting of another.   This was not done by Heinrich ; he did not abandon the first, and did not accept a second as a substitute, as he never paid the second any rent.   But let the plaintiffs call it an attornment if they please.   The statute (section 3080, R. S. of 1879) says the act is void and shall not affect the possession of the landlord.   See, also, the following cases where the force and effect of the statute have been construed :   *Schultz v. Arnot, Lindell et al.*, 3 Mo. 172 ; *Rutherford v. Ullman*, 42 Mo. 216 ; *McCartney v. Auer*, 50 Mo. 395 ; *Bank v. Clavin*, 60 Mo. 559.

*J. E. Munford* also for respondents.

Adverse possession for ten years will not only bar

a recovery by the true owner, but will extinguish his title and confer it on the adverse occupant. On this point see : 59 Mo. 444 ; 56 Mo. 177 ; 47 Mo. 282 ; 44 Mo. 596 ; 38 Mo. 561 ; 37 Mo. 408 ; 33 Mo. 35 ; 30 Mo. 99 ; 16 Mo. 273 ; 13 Mo. 335 ; 11 Mo. 3. The possession need not be actual, but the usual acts of ownership is sufficient. See : 68 Mo. 400 ; 66 Mo. 356 ; 60 Mo. 420 ; 49 Mo. 441 ; 22 Mo. 70 ; 20 Mo. 186.

RAY, J.—This is an action of ejectment for the possession of a lot of land in the western part of the city of St. Louis, described in the petition. The suit was commenced in 1877 against Heinrich alone, who was in the actual possession of the premises. The court, on motion of J. E. Munford and the heirs of Trusten Polk, who claimed to own the premises in fee, and that Heinrich was their tenant, admitted them as co-defendants.

The petition is in the usual form ; the answer denies the allegations of the petition, pleads adverse possession, the statute of limitations and title in defendants. A jury being waived, the cause was tried by the court. The testimony material to the case was substantially as follows : The plaintiffs gave in evidence a patent issued in 1829 on a New Madrid location in the name of Joseph Genereaux or his legal representatives, which embraced and covered the land in dispute and other lands besides. They, also, gave in evidence various deeds from the heirs of said Genereaux down to themselves. They also gave evidence that N. P. Taylor, under whom they claimed title in 1836, took possession and fenced the whole of said Genereaux survey, and that he and his heirs continued to occupy and live upon the same, under claim of title until 1860, when Trusten Polk and his associates crossed over said fence and took possession of the tract now in dispute and fenced up the same separate and distinct from the balance of said inclosure, as hereafter stated.

The defendants, on their part, put in evidence a confirmation by the United States of a common field lot in the Grand Prairie Common Field of St. Louis to Francis Faustin dit Parent, under the act of congress of June 13, 1812, and a survey of the same by the United States duly made, recorded, and numbered 1661. This confirmation and survey also embraced and covered the land in controversy and so fenced up by said Polk and associates. Defendants also gave in evidence various deeds for said common field lot from persons claiming to be heirs and legal representatives of said Faustin dit Parent to Trusten Polk and Vandeventer, under whom said co-defendants claimed title. These deeds bore date prior to 1861. The evidence shows that in 1860, Polk and associates, under color of title, took possession of that part of the Genereaux survey, which is covered by said confirmation and survey 1661, in name of said Faustin dit Parent, as before stated. They took down the fences put there by Taylor, and fenced up that portion of the Taylor tract covered by said confirmation and survey in the name of Faustin, separate and distinct from the balance of the Taylor inclosure as aforesaid. Afterwards, in 1861, Polk and associates put the defendant, John Heinrich, into the possession of the land thus fenced up by them, and gave him a lease of the land as their tenant at an annual rent of eighty dollars. The first lease so given to Heinrich, was dated February 23, 1861. Subsequent leases given by the same parties to Heinrich, call for an annual rent of ninety dollars. The proof is, that Heinrich continued to occupy said land from the time he was first so put in possession till the commencement of this suit, as the tenant of the Polk heirs and associates, paying regularly the amount of rent stipulated in said leases. In 1863, Major Bryan and J. G. Page, claiming to represent the heirs of Taylor, went to the land and told Heinrich that the land he was occupying belonged

to the heirs of Taylor, and that unless he took a lease from them, they would turn him out. They offered him a lease for one year at a nominal amount of one dollar, and he took it. He afterwards took other leases from them at the same nominal rent. These leases from the Taylor heirs covered other lands besides the tract now in dispute.

During all the time, from February, 1861, the date of the first lease, to the commencement of this suit in 1877, said Heinrich continued to pay rent at eighty and ninety dollars per year to Polk and his associates who claimed title under said Faustin dit Parent. There is no pretense that Polk and associates knew anything of the leases of the Taylor heirs to said Heinrich, and the Taylor heirs claim that they had no knowledge of the Polk leases to Heinrich when they gave him their leases, and the evidence is not clear that they had such notice. It does not appear that Heinrich had any hand in taking possession of the land in 1860, or ever saw it till put on it in 1861, as tenant of Polk and his associates.

At the conclusion of the testimony, the court, at the instance of the plaintiffs, gave the following instruction :

"If the jury find from the evidence that N. P. Taylor took actual possession, fenced in the whole of the Genereaux tract in 1836, and that he and his heirs continued in such actual possession for more than twenty years thereafter, and that said tract embraced and covered the premises in dispute, such possession was effectual to convey to said Taylor and his representatives all the right and title confirmed to Faustin dit Parent or his representatives, and such possession vested in said Taylor and his representatives the documentary title set up by Polk and others under said Parent or Faustin and given in evidence by the defendants in this case."

"If N. P. Taylor and his representatives took the actual possession of the Genereaux tract by fencing up

the whole of it and held such possession, claiming the tract in fee for more than twenty years prior to the entry of the defendants, or those under whom they claim, such possession vested the fee in said Taylor's representatives."

The following instructions asked by plaintiffs were refused by the court, the plaintiffs duly excepting:

"If N. P. Taylor and his representatives took and held the actual possession under fence of the whole of the Genereaux tract for more than twenty years, and the premises in dispute are a part of the same, and the defendant Henry, or his lessors, after a lapse of said twenty years, and while the Genereaux tract was so fenced in and in possession of the representatives of said Taylor, crossed over their fences and fenced up the premises in dispute, then said Henry and those under whom he entered were co-trespassers, and said Henry might lawfully re-deliver the premises in dispute to said Taylor's representatives, although he was put in possession by his co-defendants as their tenant."

" If Taylor and his heirs had been in the actual possession of said premises for twenty years, and the defendants took possession thereof as trespassers, and as soon thereafter as the intrusion was known to the Taylor heirs, they demanded of John Henry the re-delivery of the possession to them, and if said Henry was the only person in the visible and actual possession, and was the only person known to them as being or claiming to be in such possession, and thereupon said Henry took a lease from them and admitted himself as holding possession under and for them, then the possession of said Henry was not adverse to the heirs and representatives of said Taylor, so long as he continued to acknowledge them as his landlords, even if he had entered upon said premises under and as tenant of his co-defendants or their ancestors in the title, and held, also, a lease from them."

At the request of defendants, the court gave the following instructions :

" 1.  If the court, as trier of the facts, finds from the evidence that Trusten Polk, or he and his associates, claiming the land in dispute, in good faith, put the defendant John Heinrich on the land in 1861 as their tenant, and he has continued since that time on said land, paying rent to them as their tenant, then the court is requested to declare the law to be, that no attornment of Heinrich to any claimant, without the consent of Polk and his associates could destroy his relation as tenant of Polk and others."

" 2.  If the court, as trier of the facts, finds from the evidence that Trusten Polk and his asssociates, in good faith, claimed to own the land in dispute, and in February, 1861, leased the land to defendant Heinrich, and that Heinrich went into possession of the same, *in good faith, as tenant of Polk or his heirs and associates*, and he continued and was such tenant in October, 1863, when he signed the papers produced by plaintiff, wherein he agrees to hold possession of what is there called lot twelve of the Taylor place, for the Taylor heirs, and that lot twelve covers the land in dispute, and, also, other lands claimed by Taylor, then the court is requested to declare the law to be that said paper of October, 1863, is wholly void and inoperative to destroy the tenancy of Heinrich under Polk, whether Heinrich did or did not notify the agents of the Taylor heirs that he was a tenant of Polk as to the land in dispute, and the same rule would apply to any other similar undertaking of Heinrich."

" 3.  If the court, as trier of the facts, finds from the evidence that in 1861 Trusten Polk, or that he and his associates, in good faith, claimed the land in dispute and leased it to defendant Heinrich, and that ever since 1861 said Heinrich has occupied said land, paying rent, as

VOL. 86—34

tenant, to Polk and his associates and heirs, and that Polk and his associates and heirs have thus, through said tenant, had open, notorious, continuous, and exclusive possession of said land for more than ten years next before the commencement of this action, then the court is requested to declare the law to be, that such possession gives defendant Polk and his associates title and plaintiffs cannot recover.''

To the giving of which, the plaintiff duly accepted.

There was a verdict and judgment for defendant, and the "plaintiffs having made an unavailing motion for a new trial, appealed the case to the court of appeals, where the judgment was by consent affirmed *pro forma*, from which judgment an appeal has been duly prosecuted to this court. The only question before us on this record is, the propriety of the action of the trial court in giving and refusing said instructions. It is conceded that the title based upon a confirmation, under the act of congress of June 13, 1812, to a '' common field lot,'' and a survey thereof by the United States is a better title than the one based on a patent issued in 1829, on a New Madrid location and a survey thereof for the same tract of land. The elder title is conceded to be the better title, and, in general, must prevail in an action of ejectment. *Glasgow v. Lindell's Heirs*, 50 Mo. 60; *Langlois v. Crawford*, 59 Mo. 456. But it is contended by the plaintiffs, and rightfully so contended, that the actual, adverse, open, and continuous possession of the tract in question by the plaintiffs and those under whom they claim from 1836 to 1860, under claim and color of title, will not only bar a recovery by those claiming under the elder title, but will, also, confer title upon those claiming under such adverse possession, for such is the settled law of this state. *Merchants' Bank v. Evans*, 51 Mo. 335 ; *Shepley v. Cowan*, 52 Mo. 559; *Barry v. Otto*, 56 Mo. 117; *Ridgeway v. Holliday*, 59 Mo. 444.

It must be conceded, therefore, that in 1860, when Polk and his associates took forcible possession, those claiming under Taylor had become the owners in fee of the tract in dispute, although the same was covered by the elder title of the confirmation and survey under the act of June, 1812, under which Polk *et al.* claimed when they so entered. It may be conceded, also, that Polk *et al.* were trespassers when they intruded upon the actual possession and inclosure of the Taylors in 1860 ; but it must, also, be conceded that Taylor was, also, a trespasser in 1836, when he intruded upon the constructive possession, which the legal title of Faustin dit Parent conferred upon those claiming thereunder. In this particular, there is, therefore, no difference between the origin of the respective titles under which these litigants claim and must rely. · Both titles had their origin in an act of trespass, the one being a trespass upon a constructive possession, the other upon an actual possession. It must, therefore, be conceded that the same rule of law and doctrine which conferred title to the tract in dispute upon the Taylors, by reason of their adverse possession under claim and color of title, also conferred title upon Polk and his associates by reason of their adverse possession of the tract in dispute from 1860 or 1861 to 1877, when this suit was brought. The fact that the defendant Heinrich, for most of that period, was in the actual occupancy of the land, yet, as he held the same under a lease from Polk and his associates, and as their tenant paying rent therefor regularly, the law made his possession the actual possession of his landlords, Polk *et al.*, under whom these co-defendants claim title.

The further fact that Bryan and Page, claiming to represent the heirs of Taylor, went to the land in 1863, and without the knowledge of Polk and associates, prevailed upon said Heinrich while he was in the posses ʿon of said land, as tenant of Polk *et al.*, to accept a lea of

the same from the Taylor heirs, cannot in any wise affect
the possession of his landlords, Polk *et al.* Under the
law, both statute and common, such a lease so given and
accepted is wholly void and inoperative as to said land-
lords and those claiming under them. R. S. of 1879,
sec. 3080; *Schultz v. Arnot, Lindell et al.*, 33 Mo.
172; *McCartney v. Auer*, 50 Mo. 395; *Bank v. Clavin*,
60 Mo. 559. Under the facts of this case it is not per-
ceived how the fact that Heinrich, the tenant, at the
date of the Taylor leases, may have been the only party
in the visible, actual possession of the premises, and the
further fact (if such it was) that the Taylor heirs may
have supposed him to be a mere squatter, and may not
have known that he was a tenant of Polk *et al.* under a.
lease, paying rent therefor, can in any way or to any
extent alter the law as to Polk and his associates who
never knew or consented to the Taylor leases in any
manner. The fact that the Taylors may have supposed
the tenant to be a mere squatter on the premises and may
not have known that he held possession for the Polks
under a lease from them and as their tenant, may be
their misfortune, but under the facts, manifestly, is not
the fault of Polk and his associates. They did nothing
to make that impression, or to prevent them from inquir-
ing of Heinrich, if they had been so disposed, by what
right or title he held or claimed the premises. Such an
inquiry would have been but natural, and, under the
facts, was probably their duty. Why they refrained from
such inquiries, does not appear. Even if Heinrich, with-
out the knowledge or consent of the Polks, should have
intentionally misled them in that particular, it is not
perceived why this duplicity of the tenant should pre-
judice or affect the legal rights of the landlords. But
concede, as claimed by appellant, that Heinrich, the
tenant, never informed either party of having any lease
from the other, and that neither party in fact knew, or
had reason to suspect the existence of such lease, or

holding from the other, and that both parties acted in the utmost good faith in the premises, still it is not perceived how this state of facts can help the plaintiffs. In such circumstances, the familiar doctrine of the law and duty of the court is not to interfere between such parties and litigants, but leave them where it found them. In any event, the plaintiffs, under the facts, were not entitled to recover and there was, therefore, no error on the part of the court in giving or refusing said instructions, and for these reasons the judgment of the court of appeals is affirmed. All concur.