FREEMAN v. MOFFITT et al., Appellants.

Division Two, December 23, 1893.

1. **Practice:** FINDING OF FACTS: SPECIAL VERDICT. Written conclusions of fact found by the court are in the nature of a special verdict and where there is evidence tending to establish the facts so found, the supreme court will not disturb them, if the conclusions of law are correct.

2. **Lease:** ATTORNMENT: STATUTE. A lessee of a purchaser at a sale under a second deed of trust may lawfully attorn to a purchaser, at a subsequent sale under a prior deed of trust (R. S. 1889, sec. 6373).

3. **Deeds of Trust:** FORECLOSURE: PAROL EVIDENCE. Where two deeds of trust were executed by the same person on the same property on the same day and both were recorded in the same volume of the records, parol evidence is competent, as against one having knowledge of the facts, to show that a foreclosure sale made by the trustee was under the second and not the first deed of trust, although the notice of sale and deed by the trustee recited the wrong page of the record so as to make it seem that the sale was under the first trust deed, the recitals in the trustee's deed being as applicable to one trust deed as to the other.

4. ———: ———: EQUITY OF REDEMPTION. The trustee's deed, in such case, conveyed merely an equity of redemption and not the legal title to the land.

5. **Land:** POSSESSION: TITLE. Knowledge of possession of land by a third person is sufficient to put one desiring to purchase on inquiry as to the title.

6. ———: CHAIN OF TITLE: CONSTRUCTIVE NOTICE. One is charged with constructive notice of all the recitals in the recorded deeds which constitute the chain of title under which he claims.

7. ———: QUITCLAIM DEED: WARRANTY OF TITLE. A grantor in a quit-
claim deed warrants title against no one but those claiming under
him.

8. ———: MORTGAGE: PARTNERSHIP: SATISFACTION. Where a partner-
ship buys land, assuming a mortgage thereon, and permits the mortgage
to be foreclosed for nonpayment, a purchase by one of the partners
under the foreclosure sale does not entitle him to a deed for the land,
but it constitutes merely a satisfaction of the mortgage.

*Appeal from Polk Circuit Court.*—HON. W. I. WALLACE,
Judge.

REVERSED AND REMANDED.

*C. W. Hamlin* for appellants.

(1) The fact that defendants were in possession of
the premises was, of itself, sufficient notice to plaintiff
of adverse claim. *Merrett v. Poulter*, 96 Mo. 240;
*Vaughn v. Tracy*, 25 Mo. 318; *Levy v. Holberg*, 67 Miss.
526; *Wise v. Weimer*, 23 Mo. 237; *Bryan v. Hodges*,
107 N. C. 492; *Manufacturing Co. v. Hendricks*, 106
N. C. 485; *Lance v. Gorman*, 136 Pa. St. 200; 20 Am.
State Rep. 914; 16 Am. and Eng. Encyclopædia of Law,
sec. 2, p. 792; also same volume, sec. 7 at page
800, and cases cited; *Leavitt v. La Force*, 71 Mo. 356;
*Kitchen v. Railroad*, 69 Mo. 265. (2) There was
enough appearing of record lying within the chain of
plaintiff's title to put a reasonably prudent person upon
inquiry and to give him notice of defendant's claim of
title. *Tydings v. Pitcher*, 82 Mo. 379; *Patterson v. Booth*,
103 Mo. 414. (3) The fact that the consideration paid
by Smith and McQuary were so grossly inadequate,
and the fact of the recitals in McQuary's deed to
W. B. Freeman to warrant and defend the title against
all persons claiming under, by, or through, him, but
against the claim of no other person whomsoever, and
the fact that defendant was in possession of the premises

at the time plaintiff traded for it, are all circumstances such as would put a reasonably prudent and cautious person upon their inquiry if he is acting in good faith. *Roan v. Winn*, 93 Mo. 511; *Briggs v. Rice*, 130 Mass. 50; *Singer v. Jacobs*, 3 McCrary (U. S.) 638; *Lowry v. Brown*, 1 Coldw. (Tenn.) 456. (4) The court tried the case upon the theory that the tenant could not dispute his landlord's title under any circumstances. See first declaration of law on part of plaintiff, page 20, *supra*. The statute makes exceptions as to sale under a deed of trust. R. S. 1889, sec. 6373, p. 1503; *Lindenbower v. Bently*, 86 Mo. 515; *Holden Building and Loan Association v. Wann*, 43 Mo. App. 642. (5) A tenant is permitted to show that his landlord's title is extinguished. *Chaffin v. Brockmeyer*, 33 Mo. App. 92. (6) W. B. Freeman took by special warranty deed and all others had been quitclaim or trustee's deeds, and the registry act does not aid plaintiff in this case. A quitclaim deed is notice of all prior equities. *Bogy v. Shoab*, 13 Mo. s. p. 380; *Ridgeway v. Halliday*, 59 Mo. 444; *Mann v. Best*, 62 Mo. 491; *Wolf v. Dyer*, 95 Mo. 545. (7) Plaintiff not producing his deed at the trial the burden was on him to show its execution and delivery. *Tyler v. Hall*, 106 Mo. 320. (8) Under the law and all the testimony, the judgment of the court was for the wrong party.

*Upton & Skinker* for respondent.

(1) Appellants have wholly failed to file a full, fair and complete printed abstract of the record as required by rule 13 of this court, and their appeal should be dismissed. *Long v. Long*, 96 Mo. 180; *Craig v. Scudder*, 98 Mo. 664; *Snyder v. Free*, 102 Mo. 325. Not only have they failed to "set forth so much of the record as is necessary to a full and complete under-

standing of all the questions presented to this court for decision," but their willful and systematic omission of the most important evidence offered by respondent shows a deliberate attempt to mislead and deceive the court. (2) Moffitt having gone into possession as the tenant of respondent's grantor, W. H. Smith, he can not now dispute respondent's title by setting up a paramount title in Wilkinson. *Pentz v. Kuester*, 41 Mo. 447; *Stagg v. Tanning Co.*, 56 Mo. 317; *Bank v. Clavin*, 60 Mo. 559; *Loring v. Harmon*, 84 Mo. 123; *Farrar v. Heinrich*, 86 Mo. 521; *Lyon v. LaMaster*, 103 Mo. 612. (3) A tenant's possession is his landlord's possession. His attornment to a stranger is void. Hence, the possession of Moffitt, under a written lease from respondent's grantor, could not furnish constructive notice of any adverse claims. See authorities cited *supra*. (4) A party is not bound to search the records to see if anyone under whom he claims has made a deed subsequent to the deed under which he claims. *Tydings v. Pitcher*, 82 Mo. 379; *Meier v. Meier*, 105 Mo. 411; 2 Jones on Mortg., sec. 1624; 3 Wash. on Real Property, p. 292; Tiedeman on Real Prop., sec. 817. Hence the record of the trustee's deed to Wilkinson and the lease from Wilkinson to Moffitt did not give constructive notice to plaintiff. (5) A defendant in an ejectment suit can not avail himself of an equitable defense he does not plead. *Russell v. Whitely*, 59 Mo. 196; *LeBeau v. Armitage*, 47 Mo. 138; *Ells v. Railroad*, 51 Mo. 200. (6) But the matters appellants attempt to prove do not tend to establish an equitable defense even if they had been pleaded. The Equitable Mortgage company, with full knowledge that both the power of attorney under which the trustee was acting, as well as the notice of sale, described the first mortgage, directed the trustee to proceed with the sale. They then had the trustee execute to the purchaser at

the sale a trustee's deed which they had prepared, which recited that the sale was made under the first mortgage. A party can not claim that an act thus deliberately done was a mistake. The mistake, if any was made, was one of law in supposing that the trustee could, by a simple announcement, make a sale under the first mortgage a sale under the second mortgage, but *"ignorantia legis neminem excusat."* *Mathews v. Kansas City*, 80 Mo. 231; *Brown v. Fagan*, 71 Mo. 563; *White v. Graves*, 68 Mo. 218; *Rice v. Groffman*, 56 Mo. 434; *Dailey v. Jessup*, 72 Mo. 144; 2 Pom. Eq., sec. 854; 1 Story's Eq., sec. 110.

GANTT, P. J.—This is an action of ejectment for lands in Polk county, Missouri, described as the southeast quarter of the southeast quarter of section 26, and north half of the northeast, and northeast quarter of northwest quarter and ten acres off the north side of the southeast quarter of northeast quarter of section 35, all in township 34, range 22 west, 170 acres.

Plaintiff alleges he was entitled to said lands on the twenty-eighth day of November, 1890, and avers the ouster by defendant on December 1, 1890, asks for possession, damages in the sum of $500 and rents and profits at $25 per month.

The action was commenced against Moffitt alone, but at the April term, 1891, defendant Wilkinson, on his motion and by consent, was made defendant also. Defendant Moffitt admitted he was in possession as the tenant of Wilkinson and denied all other allegations in the petition, and Wilkinson admitted that Moffitt was in as his tenant and denied all other averments in the petition.

The cause was tried at the October term, 1891, of the Polk circuit court, by the court without a jury.

It was admitted that Reuben Lunceford was the

common source of title.    Plaintiff then read in evidence a deed of trust from said Lunceford and wife of date September 1, 1886, conveying the lands in suit to Henry J. Page, as trustee, to secure to the Equitable Mortgage Company, the payment of a note for $1,200 executed by said Lunceford, bearing date September 1, 1886, and payable September 1, 1891, with interest thereon from date at the rate of seven per cent. per annum, payable semi-annually on first days of March and September in each year, according to coupons or interest notes thereto attached, which deed of trust was recorded *in Book 16 at page 119*, in the recorder's office of Polk county.

It contained a power of sale in these words: "And the said party of the second part, or in case of his death, inability or refusal to act, or absence from the state of Missouri, then the (then) sheriff of said county of Polk and state of Missouri (who shall thereupon become his successor to the title of said property, and the same become vested in him in trust for the purposes and objects of these presents, and with all the powers, duties and obligations thereof) may, at the request of the holder of said note, proceed to sell the property hereinbefore described, and any and every part thereof and all rights and equity of redemption of the said party of the first part and the heirs, executors and assigns of the said first party therein, at public vendue to the highest bidder at the front door of the state circuit courthouse in the county of Polk and state of Missouri, first giving twenty days public notice of the time, terms and place of sale and the property to be sold by advertisement in some newspaper printed and published in the county in which the land is situated, etc."

Second deed of trust from Reuben Lunceford and wife to Henry J. Page, trustee, Equitable Mort-

gage Company, beneficiary, covering the land in contro-
versy, dated September 1, A. D., 1886, and for the
sum of one hundred and twenty dollars ($120), *payable
in ten installments*, and which deed was a second deed of
trust on said land, and recorded in Book 16 at page 122.

Plaintiff next offered a power of attorney of date
April 10, 1889, from said mortgage company, and
Henry J. Page, trustee, to Samuel Hadlock, sheriff of
Polk county, which was recorded in Book 28, page 378,
recorder's office, which contains the following among,
other recitals:

"Whereas, Reuben Lunceford and———, his wife,
by their deed of trust dated the first day of September,
1886, *and recorded in the recorder's office in and for Polk
county, Missouri, in Book 16, at page 119*, conveyed to
Henry J. Page, trustee, the property in said deed
described in trust to secure to the Equitable Mortgage
Company, of Kansas City, Missouri, the payment of a
certain note therein described, the said property being"
(the land in controversy), and authorizing Hadlock to
make the sale and act as trustee instead of said Page,
and in which it was recited that said note *had become
due and payable*, and Page had refused to act, etc.

Plaintiff next read a trustee's deed from Reuben
Lunceford and wife by Samuel Hadlock, trustee by
appointment, to W. H. Smith, conveying land in
controversy, said deed bearing date of June 8, 1889,
and recorded July 22, 1889, in Book 31, at page 224.

Said deed is in the usual form and contains the
following, among other recitals:

"Whereas, Reuben Lunceford and———, his wife,
by their deed of trust dated the first day of September,
1886, and recorded in the recorder's office in Polk
county, Missouri, *in Book 16, at page 119*, conveying to
Henry J. Page, as trustee, the property hereinafter
described. * * * And whereas, Henry J. Page,

the said trustee has refused to act, and by virtue of a deed of appointment dated April 10, 1889, recorded in the records of Polk county, Missouri, *in Record 28, at page 378*, appointing the undersigned as trustee.   *   *''

Said deed further recites the notice of sale and publisher's affidavit, which are annexed to and recorded with said deed, and are expressly declared to be a part of the same.   Said notice of sale contains the following recitals:

"Whereas, Reuben Lunceford and———, his wife, by their certain deed of trust dated September 1, 1886, and recorded in the office of the recorder of deeds of Polk county, Missouri, *in Book 16 at page 119*, conveying to Henry J. Page, trustee, the following described real estate   *   *   *   in trust to secure the payment of one promissory note therein described, together with the interest thereon as provided for in said note and deed of trust.   *   *   *   And, whereas, the said Henry J. Page refused to act in this behalf; and, whereas, the Equitable Mortgage Co., the legal holder of said note, by its certain deed of appointment dated April 10, 1889, recorded in the office of recorder of deeds of Polk county, Missouri, in Book 28 at page 378, appoint the undersigned as trustee, to act instead of Henry J. Page."

And also these recitals:   "And, whereas, it is provided in said note and deed of trust that if default be made in the payment of any installment of said note when due, as provided in said note, the principal sum of said note shall thereupon become due and collectible.   And, whereas, said Reuben Lunceford and Betsy B. Lunceford have made default *in the payment of the fourth and fifth installments provided for in said note.*"

Plaintiffs also offered the following conveyances: A lease from W. H. Smith to Theodore Moffitt of the

lands in controversy.   Said lease dated November 23, 1889, provides that Moffitt shall pay one-third of grain raised as rent.   That his term shall commence from date of lease and expire March 1, 1891, except that in case Smith shall sell the land, then Moffitt shall give immediate possession, etc.

Deed from W. H. Smith and wife conveying land in controversy to Jeremiah Wolf.   Deed dated October 30, 1889, and recorded November 22, 1889, in Book 12 at page 638.

Trust deed from Jeremiah Wolf to W. R. Spoon, trustee for the Bolivar Loan and Trust Co., consideration $1,200, dated November 1, 1889, recorded November 22, 1889, in Book 29 at page 558, conveying land in controversy.   This is a foreclosure of the above deed of trust from Wolf to the Bolivar Loan and Trust Co., and contains usual recitals.

Deed from J. H. McQuary and wife to W. B. Freeman, dated November 24, 1890, recorded November 27, 1890, in Book 38 at page 142, and recites: "That the said parties of the first part in consideration of the sum of $3,500 to them paid by the party of the second part, do by these presents, grant, bargain and sell unto the second party," the lands in controversy, but warrants only against grantor and those claiming under him.

A general warranty deed from W. B. Freeman (single) to L. E. Freeman, dated November 26, 1890, recorded November 27, 1890, in Book 38 at page 143, reciting a consideration of $3,500 and conveying lands in controversy.

It was agreed that the rents should be estimated at $50 per year.   Here plaintiff rested.

The defendant introduced the following testimony:

*First.*   Deed of trust from Reuben Lunceford and wife to Henry J. Page, as trustee, the Equitable Mort-

gage Company, beneficiary, dated September 1, 1886, and recorded *in Book 16 at page 119*, conveying the land in controversy.

*Second.* Trustee's deed from Lunceford and wife by Samuel Hadlock, acting trustee, to the defendant, Chas. Benj. Wilkinson, to the lands in controversy, dated January 6, A. D. 1890, and recorded *on January 15, A. D. 1890, in Book 31 at page 435.*

*Third.* A lease from Chas. Benj. Wilkinson to Theodore Moffitt to property in controversy, dated January 23, A. D. 1890, and recorded in Book 28 at page 453. Also another lease between same parties to said lands, dated January 27, 1891.

*Fourth.* Warranty deed to equity of redemption to property in controversy from Lunceford and wife to Albert Ray, subject to $1,200 mortgage, dated January 15, 1889.

There was parol evidence on both sides, but it is unnecessary to set it out as the substance of it appears in this opinion, and the findings of the circuit court made under the statute as follows:

"L. E. FREEMAN, *Plaintiff,*
     v.               } Ejectment.
THEODORE MOFFITT *et al., Defendants.*

"The case having been tried by the court sitting as a jury, the court states its finding as follows:

"That one Reuben Lunceford was vested on the first day of September, 1886, in fee of the southeast quarter of the southeast quarter of section twenty-six (26); north half of the northeast quarter and the northeast quarter of the northwest quarter, and ten (10) acres off the north side of the southeast quarter of the northeast quarter of section thirty-five (35) all in township thirty-four (34) north of range twenty-two (22) west of the fifth principal meridian, situate in Polk county,

Missouri. That on said last named date said Lunceford borrowed $1,200 of the Equitable Mortgage Company, of Kansas City, and he and wife executed to the said company two deeds of trust, one to secure the principal sum borrowed and the other to secure the interest coupons to become due thereon. That the said debt and interest coupons became due and the same not being paid the said Equitable Mortgage Company, and Henry J. Page, the trustee named in said deed of trust, jointly executed the power of attorney, dated April 6, 1889, appointing and empowering Samuel Hadlock, then sheriff of Polk county, Missouri, to act as trustee in making the sale of the land above described. The said company, through its attorney, prepared and sent to said Hadlock an advertisement to be published making sale of the above lands, and in said advertisement it was recited that the above land was to be sold under deed of trust recorded *in Mortgage Book 16 at page 119, the same being the first deed of trust for the principal sum of $1,200.* That the loan to said Lunceford was negotiated through the firm of J. N. Sperry & Co. (composed at the time of the foreclosure, of J. N. Sperry, W. R. Spoon and W. H. Smith). That at the date of said foreclosure J. N. Sperry & Co. had bought the equity of Reuben Lunceford, and that Lunceford, at the request of Sperry & Co., had made deed to his interest in the land, to one Albert Ray, who took subject to the first deed of trust. That when Samuel Hadlock received the power of attorney to act as trustee to sell said land, he was instructed by said company to call on Sperry & Co. and request the payment of the interest coupons; that Sperry & Co. asked Hadlock to hold up the advertisement a short time and they would pay the interest coupons, and that Hadlock advised them that he had authority to make sale under the deed of trust for the payment of the

interest coupons; that after waiting several months
Sperry & Co. failed to pay said interest coupons and
he then published the advertisement sent by said
Equitable Mortgage Company, in the paper; that
before the sale the attorney of the said Equitable
Mortgage Company wrote to said Hadlock that in
preparing the advertisement he had made a mistake
in reciting that the deed of trust under which said
sale was to be made was recorded in Mortgage Book
16 at page 119; *that it should be Book 16 at page 122,*
and instructing him to notify all persons at the sale
that the sale was being made under the second deed of
trust *recorded on page 122,* and that the sale was subject
to the deed of trust for *$1,200* recorded on page 119;
that in accordance with said instructions said Hadlock
did make this announcement at the sale, and that *it
was understood by the purchaser at said sale, that the
sale was made under the second deed of trust for the inter-
est coupons; that after said purchase by said W. H.
Smith he conveyed said land without consideration to
Jerry Wolf,* who executed a deed of trust back to W. R.
Spoon, trustee for the Bolivar Loan Company; that
said Bolivar Loan Company was composed of J. N.
Sperry, W. R. Spoon, W. H. Smith and A. F. Shriner,
stockholders; *that Jerry Wolf was paid $5 to take the
deed from Smith and execute the note and deed of trust to
said Bolivar Loan Company, and the court finds that said
conveyances were fraudulent and void as to all parties
with notice:* that said land was sold under said last
named deed of trust and J. H. McQuary bought the
land under this sale, and traded the same to W. B.
Freeman, who conveyed to his son, the plaintiff. The
court further finds that *the said W. B. Freeman and
his grantee, his son, were both innocent purchasers, with-
out notice, and that they bought the land in controversy in
good faith and for value, and they are not chargeable*

*with any bad faith or notice of any of the fraudulent and collusive acts shown by the evidence in this case.* The court further finds that Theodore Moffitt was the lessee of W. H. Smith, and that his attempted attornment to Wilkinson was void; wherefore judgment must go for plaintiff.   W. I. WALLACE, Judge.''

Upon the facts thus found, at plaintiff's request, the court gave the following declarations of law, to the giving of which the defendants objected and then and there and at the time duly excepted.

"1. Defendant Moffitt having gone into possession as a tenant of Smith is estopped from denying his landlord's title, and plaintiff having shown a chain of title from Smith to himself is entitled to all rights and remedies against Moffitt that Smith might have asserted had he not conveyed the land.

"2. The attornment of Moffitt to Wilkinson was and is void; nor can Wilkinson interpose any defense in this case that Moffitt could not have interposed.

"3. The deed from Hadlock, acting as trustee, to W. H. Smith, passed to Smith all the right, title and interest that Reuben Lunceford had in the land when he executed the deed of trust recorded in Book 16 at page 119.

"4. It being admitted that Reuben Lunceford had the title to the land, the deeds read in evidence by plaintiff passed the title to him and he must recover in this action.

"5.   Under the evidence, plaintiff is entitled to a verdict and judgment.

"6.   The deed of trust recorded in Book 16, page 119, having been foreclosed on the eighth day of June, 1889, the subsequent foreclosure thereof on the sixth day of January, 1890, was void, and no title passed by said sale and the deed made to Wilkinson under said sale is void and conveys no title.

"7.  The lease from Wilkinson to Moffitt is void and confers no right to withhold the land from plaintiff."

The court, at the request of the defendant, gave the following instruction:

"5.  The purchaser at a trustee's sale, and subsequent purchasers of title acquired at said sale, are presumed in law to have knowledge of all that the record discloses as well as the advertisement under which the sale is made effecting such title under said sale so acquired, and in this case if the records disclose enough to satisfy a prudent and cautious man that said sale in June, 1889, was being made under the second mortgage, or disclosed enough to put him on his inquiry, then, in that event, he could not be an innocent purchaser for value."

The defendant requested the court to declare the law as follows:

"1.  The court declares the law to be that Smith, the purchaser at the June, 1889, sale, knew that the sale was being made under the second mortgage, either by knowledge communicated to him, or his firm, by private parties before the sale or by the announcement made by the sheriff and acting trustee at the time of the sale before the bidding began, then in that event he would only take such title by virtue of such purchase as would pass to him under the second mortgage.

"2.  The court declares the law to be that under the testimony in this case the plaintiff by virtue of his purchase took just such title as W. H. Smith acquired under the trustee's sale in June, 1889, and, if Smith acquired title only under the second and that the defendant, Wilkinson, afterwards bought said land at trustee's sale under the first mortgage, then in that event Wilkinson's title is the paramount title and the finding must be for the defendant.

"3.  The court further declares the law to be that

if from the testimony in this case the court finds that Smith, the purchaser at the June, 1889, sale, bought at a sale under the second mortgage and that the defendant, Moffitt, went into possession of said land as his tenant and that afterwards, to-wit, in January, 1890, the defendant, Wilkinson, bought said lands at trustee's sale under the first mortgage, then and in that event Wilkinson's title effectually destroyed Smith's title to said land and the defendant, Moffitt, had a perfect right to attorn to Wilkinson, the purchaser, and holding the title under the first mortgage.

"4. Under the testimony in this case, the finding and judgment must be for the defendant."

Which the court refused and the defendants duly excepted at the time.

Defendants in four days filed their motion for new trial, which was overruled and they appealed.

The conclusions of fact, so far as found by the court and stated by it in writing, stand as a special verdict; and if there was evidence tending to establish the facts found, they will not be disturbed in this court, if the conclusions of law are ascertained to be correct. *Lingenfelder v. Wainwright*, 103 Mo. 578; *Wiggins Ferry Co. v. Railroad*, 73 Mo. 389; *Vogt v. Butler*, 105 Mo. 479; *Blount v. Spratt*, 113 Mo. 48.

Our examination of the errors assigned will be first directed to the instructions of the court with reference to the facts found by it.

The first and second declarations of law for the plaintiff are that "the defendant, Moffitt, having gone into possession as the tenant of Smith, is estopped from denying his landlord's title and plaintiff, having shown a chain of title from Smith to himself, is entitled to all rights and remedies against Moffitt that Smith might have asserted, had he not conveyed the land." "The attornment to Wilson was and is void."

What were Smith's rights upon which plaintiff's claim was founded? The learned judge found, as he was abundantly justified in doing, that Smith bought at a sale intended as a foreclosure of the junior or second deed of trust, and that Smith knew that he was not purchasing under a foreclosure of the deed of trust for $1,200, recorded in Book 16, page 119.

Smith took his deed subject to the deed of trust recorded in Book 16, page 119. More than this, Smith and his partners had, prior to this sale, purchased Lunceford's equity of redemption and had assumed the payment of the mortgage given for the installment note recorded in Book 16, page 122. So it is very clear that when Smith took his deed he took it with full notice of, and subject to, the deed of trust recorded in Book 16, page 119, and not under a foreclosure of said deed of trust. Under these circumstances he leased the land to Moffitt for two years. Six months later, in January, 1890, the principal and prior deed of trust was foreclosed, and defendant Wilkinson purchased at that sale and Moffitt attorned to him, *as the purchaser* under the foreclosure of said prior mortgage.

That an attornment by a tenant to a stranger is void as against his landlord, both by the common law and our statute, is the settled law, but by section 6373 Revised Statutes, 1889, the tenant may lawfully attorn to one who purchases "pursuant to, or in consequence of, a judgment at law, or a decree in equity, or sale under execution, *or deed of trust.*"

Our statute had its origin in 11 George II, chapter 19, section 11, which is to the same effect, save that by our statute, we have added the words "sale under *deed of trust.*" An attornment by a tenant is an acknowledgment of a new landlord after a transfer of the title and agreement to become tenant to the new owner.

If Moffitt had been the tenant of Lunceford, there

would be no difficulty in holding under this statute, that after a valid sale under the junior deed of trust, he could have attorned to the purchaser at that sale and if another sale was then made, under the prior deed of trust of his original landlord, Lunceford, he could have lawfully attorned to the purchaser at that sale also; what effect, then, is to be given to his attornment to the purchaser under the prior deed of trust, seeing that his tenancy began and he was put in possession November 23, 1889, by Smith, who purchased at the foreclosure under the second and junior deed. At the time this lease was executed by Smith to Moffitt, the interest coupons on the prior, or $1,200 deed of trust, due on September 1, 1888, and March 1, 1889, were unpaid, and the condition was broken, and the right of the beneficiary to a sale had accrued.

By the terms of the statute itself, a tenant is permitted to attorn, "to any mortgagee after the mortgage has been forfeited." As already said, had Moffitt been Lunceford's tenant, subsequent to the mortgage, no doubt would exist of his right to attorn to the prior mortgagee of the forfeited mortgage for $1,200, for the right of the mortgagee in such a case is recognized, either to annul the lease, or to confirm the tenancy. Coote on Mortgages, p. 410.

All the acts of the mortgagor with reference to the estate mortgaged, are subject to the mortgagee's rights, and hence all leases made by him after the execution of the mortgage are in subordination to it. 1 Jones on Mortgages, secs. 703, 721, and cases cited. If the mortgagor can not by his own act grant a tenant a lease that will defer the mortgagee's right to possession after forfeiture, it can not be that he can, by executing a junior mortgage, accomplish that, indirectly, which he could not do directly.

While public policy would not tolerate the right of

a tenant to deny his landlord's title, still at common law prior to the statute, he might show that his landlord's title was determined; for while he was bound to admit that his landlord was rightly in possession when he let him in, there was no sound reason, if the landlord's title was afterwards conveyed, either voluntarily or by *proceedings in invitum*, to another, why the tenant might not aver and show this change. This right is recognized not only by section 6373, but by sections 6397 and 6398, Revised Statutes, 1889, which secure to the persons purchasing leased lands, the rents from the tenants in possesion, and provide for exhibiting their deeds to the tenants at the time of demand.

The purpose of the statute evidently was two-fold— to secure to the purchaser the rents and profits of the estate which he bought, without the cost and circumlocution of an action of ejectment, and to enable the tenant to continue his possession by simply attorning to the new owner. As said by Lord C. J. DENMAN in *Doe dem Higginbotham v. Barton* (11 Adolph. & Ellis, 307), the mortgagee (after condition broken) "might have ejected them [the tenants] and afterwards let to them, but it seems absurd to require him to go through the form of an ejectment, in order to put them into the very position in which they now stand."

Applying this principle to the case at bar, plaintiff claims title under the mortgage which constitutes defendant's right to the land, but the trial court, in view of the overwhelming evidence, found that plaintiffs grantors did not purchase under a foreclosure of *that* mortgage, *but under a junior mortgage by the* same mortgagor which recites that it is subject to this prior mortgage. If defendants bought under the foreclosure of the prior deed of trust and plaintiff's grantors had full notice of the existence of that mortgage (and of this there can not be a doubt, as he introduces it as the

basis of his case) and it was duly recorded and recited in the one under which Smith bought, the sale under this prior deed of trust completely extinguished Smith's title, if he had any, under the second mortgage and we see no reason why Moffitt should not be permitted to attorn to the purchaser at that sale; where he can be lawfully ejected, by a writ of execution or possession, he can lawfully attorn.

Plaintiff is estopped from disputing the validity of either of these deeds of trust. His case is bottomed upon their validity. We think the reason and letter of the statute, both apply to the facts of this case, and that the court erred in holding the attornment by Moffitt to Wilkinson void. On the contrary, it was his duty to have done as he did.

In the third instruction, the learned judge declared that: "Hadlock's deed passed to Smith all the right, title and interest that Reuben Lunceford had in the land when he executed the mortgage recorded in book 16, page 119," and in the fourth, he followed it up by the further declaration, that, "it being admitted that Lunceford had the title when he made the conveyance, the deeds under which plaintiff claimed conveyed him the title and he must recover." When it is considered that Smith was one of the firm, that he bought the equity of redemption in this land from Lunceford, and had assumed the second or junior mortgage, and had agreed to pay Hadlock the amount of that mortgage, and prevent the sale, and when it is remembered that the evidence does not admit of a doubt that Smith knew that Hadlock was not foreclosing the deed of trust recorded in Book 16, page 119, the court erred in giving the third instruction.

That the sheriff, by oversight, neglected to change the recital of the recording in his deed from 119 to 122 is manifest from the facts found. It is evident that

the learned judge proceeded on the idea that the deed conveyed the legal title irrespective of · the mistake in the recital, but it must be borne in mind, that these two deeds of trust were executed by the same grantors to the same trustee, for the same beneficiary, recorded in the same book on the same day. Ordinarily, the reference to the book and page would determine which deed the trustee was foreclosing, but in addition to the positive findings of fact by the court that Smith knew that Hadlock was foreclosing the *second* instead of the first deed of trust, there are other facts in the chain of title that clearly demonstrate that he was foreclosing the *second* and not the first deed. The first deed secured one note payable five years after date, September 1, 1891. That note was not due for two years, yet, whereas the second deed secured a note for $120, payable in *ten installments* of $12 each, payable on March 1 and September 1, each year. And the deed contained a provision authorizing Page, the trustee appointed, to substitute another in his place, which was not in the prior deed of trust, and there was a regular power of attorney executed by Page to Hadlock, under which Hadlock acted.

But a still more significant fact is this: the advertisement which is made a part of the deed, and is recorded with it, recites that the forfeiture for which the same is made, is the nonpayment of the *fourth* and *fifth installments provided for in the note.* Now the first note was not payable *in installments,* and no installments of the note were due.

It results, then, that we have two mortgages executed by the same mortgagors, on the same property, on the same day, and the question has arisen, which was foreclosed. Under such a state of case, resort must be had to the evidence attending the sale, and, when this is done, it is absolutely certain that the

second, and *not the first* was foreclosed.   It was not the admission of parol evidence to vary or contradict the written instruments, but as the récital in the trustee's deed referred to acts *in pais* of the trustee, the evidence was clearly admissible against Smith and his confederates, because the recitals would refer as well to the foreclosure of *the second*, as to the first deed of trust, except the mere page of the record, and it was competent to show, as a matter of fact, which deed was foreclosed and that Smith· had full notice thereof.   It is not true, then, that the sale, if otherwise valid, carried anything but Lunceford's equity of redemption, subject to the prior deed of trust, and Smith took, if at all, subject to that prior deed of trust and the court erred in refusing defendant's first instruction.

The learned judge, having held that Moffitt's attornment was void, logically found that plaintiff was not bound by the notice which Moffitt's possession of the farm gave him, when he came to Polk county to examine the land.

But when it appears that the prior mortgage was duly foreclosed in January, 1890, and all the title which Smith obtained under the junior mortgage was determined, and his tenant, Moffitt, had then attorned to the defendant Wilkinson, who was the purchaser under the prior deed of trust, it is clearly shown that Wilkinson through his tenant was in the actual, *open possession of this land, and had been for eleven months when plaintiff traded for it.*

In *Vaughan v. Tracy*, 25 Mo. 318, Judge LEONARD laid down the rule that while possession of land did not constitute in point of law actual notice of a prior deed, within the meaning of our statute, yet it was evidence of such knowledge that ought, under ordinary circumstances, to satisfy a jury that a party purchased with knowledge of the prior deed.

In *Leavitt v. LaForce*, 71 Mo. 353, SHERWOOD, C. J., remarked:

"If Winans had ventured to examine the land upon which he contemplated taking an incumbrance, which he did take on the twenty-sixth of March, immediately upon his return home, he would have had an opportunity to ascertain from Morton, who was in possession as Leavitt's tenant, the true state of the title, and under whom he held. * * * It was his duty when offering himself as a witness to have left nothing unexplained which would induce unfavorable inferences in regard to his *bona fides.*"

In *Farrar v. Heinrich*, 86 Mo. 521, Judge RAY, speaking of the heirs of Taylor, supposing that Heinrich was a mere squatter in possession, said: "The fact that the Taylors may have supposed the tenant to be a mere squatter on the premises and may not have known that he held possession under the Polks, under a lease from them and as their tenant, may be their misfortune, but under the facts, manifestly is not the fault of Polk and his associates. They (Polks) did nothing to prevent them from inquiring of Heinrich, *if they had been so disposed,* by what right or title he held or claimed the premises." Such an inquiry would have been but natural, and, under the facts, was probably their duty." See, also, *Levy v. Holberg*, 67 Miss. 526; *Bryan v. Hodges*, 107 N. C. 492; *Lance v. Gorman*, 136 Pa. St. 200.

It is true the learned judge finds plaintiff an innocent purchaser in this case, but that finding, we think, could have only resulted from the view which he took of the possession by Moffitt holding, as he did, that Moffitt's possession was Smith's, but as we have reached a different conclusion, we think there was strong evidence of notice to plaintiff of Wilkinson's title when he bought and that if he had not ignored all

the ordinary rules of prudence, he would have learned of the true state of the title and that Wilkinson was the owner.

The fact of Moffitt's possession put him upon inquiry and he should not have blindly shut his eyes to the truth as it existed, and the court should have so declared in an instruction. He was, moreover, charged with constructive notice of everything contained or recited in the recorded deeds which constituted the chain of title under which he claimed.

In Hadlock's trustee deed to Smith were recitals of default in the payment of "the fourth and fifth installments," of the note, being foreclosed; now there were no installments in the main note and he should have inquired whether there was not another note, with such a provision in it. *Patterson v. Booth*, 103 Mo. 402. Other circumstances tending to prove notice were the grossly inadequate sums paid by Smith and McQuary, and the fact that plaintiff's father took under what is equivalent to a quitclaim deed, as McQuary warrants against no one but those claiming under him. *Wolfe v. Dyer*, 95 Mo. 545; *Ridgeway v. Holliday*, 59 Mo. 444; *Mann v. Best*, 62 Mo. 491; Jones on Mortgages, sec. 600.

We have pointed out all these facts as evidence tending to prove notice, because the trial court made no finding of these facts, but merely his conclusion that plaintiff was an innocent purchaser.

There is another view of Smith's purchase to which we have not yet adverted, and that is this: when he paid the bid that his colleague and partner, Shriner, made for him, he was merely paying his own debt and he was not entitled to a conveyance of the land. His firm had assumed and agreed with Lunceford to pay these installment notes and they had no right by neglecting this duty, to force the sale and obtain a title

in this manner. It amounted to nothing more than a satisfaction of the second mortgage. *Wolfe v. Dyer*, 95 Mo. 545; 1 Jones on Mortgages, sec. 714.

For this additional reason, then, it was error to declare that Smith obtained the title by his deed. The trial court very properly found that all the transactions between Smith and Wolfe and the Bolivar Loan Company were fraudulent and void. Indeed, the records of our courts rarely exhibit a case in which the fraud was more deliberate and the means resorted to more unconscionable.

When it is considered that these parties were once the trusted agents of the company which loaned Lunceford this money, their conduct is reprehensible in the extreme. The mistake of the attorney who drew the notice of sale was seized upon at once as a pretext for robbing their former principal of its loan.

It is urged with great ability by counsel for plaintiff that the company was guilty of great negligence in sending out its notice with a reference to the wrong page and that when it discovered its mistake, it should have recalled it entirely. This is all true, but it is no justification for the bold scheme of Smith to defraud the company.

It may be that plaintiff is an innocent purchaser and had no notice of the fraudulent practices of Smith and his confederates and if he is, of course, he is in no sense chargeable with them and should not suffer for them, but it devolves upon him to account for his neglect to inquire of Moffitt as to the title under which he was occupying this land before he can hold against the purchaser under the mortgage for $1,200, recorded in Book 16, p. 119.

The judgment is reversed and cause remanded to be proceeded with in accordance with the views herein expressed. All of this division concur.