Huber v. Bossart et al.

1. **Vendor and Vendee**: INNOCENT PURCHASER: CHARGED WITH NOTICE OF WHAT. A purchaser of land is held to have constructive notice of everything which appears in any part of the deeds or instruments which constitute and prove the title purchased, and is of such a nature that, if brought directly to his knowledge, it would amount to actual notice. (Compare *State v. Shaw*, 28 Iowa, 67.)

2. ———: ———: REGISTRATION OF PRIOR DEEDS OMITTED: NOTICE. B. conveyed the land in question to P. in 1857, and again in 1870, and in 1876 P. conveyed it to D., but neither of these deeds was filed for record earlier than May 30, 1884. In 1876, D. conveyed the land to plaintiff, who placed his deed on record in that year. In February, 1884, B., appearing still to be the record owner of the land, conveyed it by quitclaim to S., who conveyed to M., who conveyed to G., who conveyed to O. The last three of these deeds were absolute conveyances, but they covenanted only against persons claiming through or under the grantees severally, and they were all made prior to the recording of either of the deeds made by B. to P. O. had no actual notice of those conveyances, and he paid value for the land. *Held* that the record of the deed from D. to plaintiff did not charge O. with notice of the conveyance of B. to P., and that there was nothing of record which charged him with notice of it. Also, that the fact that B.'s deed to S. was a mere quitclaim, and that the subsequent deeds in that line were limited warranties, did not charge O. with notice of plaintiff's outstanding equity, and that O. was entitled to have his title established as against plaintiff. (Compare *Winkler v. Miller*, 54 Iowa, 476.)

*Appeal from Boone Circuit Court.*

TUESDAY, OCTOBER 19, 1886.

PLAINTIFF brought this action in equity to quiet in him the title to 240 acres of land in Boone county. The circuit court granted the relief demanded as to five-sixths of the land, and denied plaintiff relief as to the remainder. The facts are stated in the opinion. Both parties appeal.

*Hull & Whitaker* and *George G. Wright*, for plaintiff.

*Cardell & Shortley* and *I. N. Kidder*, for defendants.

REED, J.—In 1856 the defendant William Bossart and Jonas C. Palmer resided in the state of Pennsylvania, and

were neighbors. Early in that year Bossart came to this state for the purpose of buying land. Before leaving Pennsylvania he received $500 from Palmer, which he agreed to invest in land for him. The expectation of the parties seems to have been that Bossart would be able to find desirable lands belonging to the United States which could be entered. But when he arrived in Iowa he concluded that he could invest to greater advantage by purchasing from private parties. He accordingly purchased the tract in question, and another tract of the same amount, in another county, and took the title to both in himself, and the deeds by which the land in question was conveyed to him were placed on record in Boone county soon after the purchase was made. On his return to Pennsylvania, he reported to Palmer that he had paid $2.50 per acre for the tract in question, and $5 per acre for the other tract. The parties then had a settlement, and it was agreed that Palmer should take a portion of the Boone county land; and Bossart accordingly, on the tenth of January, 1887, executed to him a conveyance of five-sixths of it.

On the ninth of May, 1870, Bossart signed and acknowledged another deed, which at the present time appears to be a conveyance of the whole of the land, to Palmer. Defendants claim, however, that when this deed was signed and acknowledged there was no grantee named in it, but that it was executed in blank, to enable Palmer, who was about to come to Iowa, to sell the land; and, by inserting in the blank in the deed the name of the purchaser, to complete the conveyance without further trouble. Plaintiff's claim with reference to this conveyance is that Palmer discovered that Bossart had paid but $1.75 per acre for the land, and that he demanded payment of the difference between that amount and the price which Bossart had represented he had paid for it, and that the deed was given in settlement of that claim. In the view we take of the case, however, we do not find it necessary to determine which of these claims is cor-

rect. The deed of January 10, 1857, was not recorded until the twenty-second of February, 1885, which was after this action was instituted. The one executed on the ninth of May, 1870, was recorded on the thirtieth of May, 1884. On the sixth of May, 1876, Palmer sold and conveyed the land to John Deiter, who, on the eighth of the same month, sold and conveyed it to plaintiff. The last named conveyance was recorded on the thirtieth of September, 1876, but that from Palmer to Deiter was not recorded until May 30, 1884. On the twenty-third of January, 1883, Bossart executed to the defendant Sanks a quitclaim deed, by which he relinquished to him all his right, title and interest in the land. On the twenty-fourth of February, 1884, Sanks executed a conveyance of the land to O. Mosier, who, on the fourth of April, in the same year, gave a conveyance of it to L. D. Gamble, and on the tenth of the same month Gamble conveyed it to the defendant A. W. Otis. Each of the three last named conveyances is an absolute deed of the land; but the covenant in each is limited, being simply against the lawful claims of all persons claiming through or under the grantor.

It is shown that Sanks agreed to pay Bossart five dollars per acre for the land, but he has not paid any part of the consideration. Mosier agreed to pay Sanks $2,000 for it. He gave his note for $1,500 of the amount, and turned over two promissory notes on other parties in payment of the balance, but he has not paid any part of the $1,500 note. It is not shown that Gamble paid, or agreed to pay, any consideration for the conveyance to him.

The important question in the case is whether Otis occupies the position of an innocent purchaser of the land for value, without notice of plaintiff's right. It was contended by counsel for plaintiff that it was not shown that he was a purchaser for value. The only evidence introduced on the question is the testimony of Otis himself. He testified that he agreed to pay $2,500 for the land, and that at the time of

the transaction he gave Gamble his check on a bank for $2,-000 of the amount, and a promissory note for $500, executed by a third party, in payment of the balance; also that he had the money in the bank with which to pay the check, and that it had been paid by the bank, and was charged to him on his pass-book. He produced the check when his deposition was being taken, and it was attached to the deposition, and introduced in evidence on the trial. It was made payable to Gamble's order, but it had not been indorsed by him, nor was there any evidence that it had been paid by the bank indorsed upon it. Counsel contend that the claim that the bank paid the money without the indorsement of Gamble, and returned it to the drawer without indorsing some evidence of the payment upon it, is incredible. It must be admitted that it would be an unusual thing for a bank to pay a check drawn to the order of an individual without his indorsement. Still, if such a check should be presented for payment by the drawee, there would be no absolute necessity for him to indorse it. There would, in that case, be no transfer of the title to the check, and the bank would be justified in paying it without indorsement, if it knew that the one who presented it was entitled to receive the money on it. Gamble lived in the same town in which the bank is situated, and was probably well known to the officers of the bank, and, while it would be against the common practice of bankers to pay him the money without requiring him to indorse the check, it is not incredible that they should have done so. The fact that there was no evidence of payment by the bank indorsed upon the check is not of much importance. It is usual for banks, upon the payment of checks, to indorse upon them a statement of the fact of payment. But the absence of such indorsement does not overcome the positive statement of the witness that the check in question had been paid.

We find, then, from the evidence, that Otis has actually paid the consideration for the land which he agreed to pay.

Huber v. Bossart et al.

When he purchased from Gamble, none of the deeds which constitute the chain of title from Bossart to plaintiff were recorded, except that from Deiter to plaintiff. But the record of that deed did not charge him with notice of the conveyance from Bossart to Palmer, and he testified positively that he had no knowledge or information that Bossart had made any sale or conveyance of the land prior to that to Sanks, and his testimony as to that fact is not contracted. He then had no actual notice of that conveyance, nor was there anything of record pertaining to it which charged him with notice of it.

If, then, he is not an innocent purchaser of the land, it is because he is charged by the recitals in the deeds which constitute his own chain of title with notice of plaintiff's outstanding equity. The rule undoubtedly is "that a purchaser will have constructive notice of everything which appears in any part of the deeds or instruments which prove and constitute the title purchased, and is of such a nature that, if brought directly to his knowledge, it would amount to actual notice." 2 Lead. Cas., Eq., 169 note *Le Neve v. Le Neve.* See, also, *State v. Shaw*, 28 Iowa, 67.

1. VENDOR and vendee: innocent purchaser: charged with notice of what.

Otis was charged with notice, then, when he made the purchase, that the conveyance from Bossart to Sanks was a mere quitclaim, and that each of the subsequent grantors, including Gamble, his immediate grantor, had declined to warrant the title conveyed except against his own acts. But this is the only fact appearing in the conveyances which was calculated to throw doubt or suspicion on the title purchased, and, in our opinion, it did not charge him with notice of plaintiff's outstanding equity. There was nothing in the recitals of any of the deeds calculated to direct his attention to the prior right, nor did they suggest any inquiry which would have enabled him to ascertain its existence or character. He knew that neither of the parties through whom he claimed had warranted the

2. ——: ——: registration of prior deeds omitted: notice.

title; but he was not required to presume that either of them had perpetrated a fraud upon some other party when he executed his conveyance of the land, nor was there anything in the recitals of the deeds to indicate that this had been done. He was not bound to inquire of his grantor whether there was a defect in the title conveyed, for if the fact was known to him it was to his interest to conceal it, and no other source of information was pointed out to him by the recitals in the deeds.

He is not affected by the fact that Sanks held by a mere quitclaim deed. That conveyance was sufficient to pass the title to the land, if Bossart was vested with it at the time of its execution; and by the record he appeared to be. In the absence of knowledge or information as to the true state of the title, he had the right to rely upon the records, and by them his grantor appeared to have the title to the land; and, having done this, and having paid a valuable consideration for the land, he is now entitled to be protected against outstanding and secret equities. The case in this respect is governed by the rule laid down in *Winkler v. Miller*, 54 Iowa, 476.

On plaintiff's appeal the judgment will be affirmed; but it will be reversed on defendant's appeal.

REVERSED.