OF

## THE·STATE OF IOWA

AT

### DES MOINES, MAY TERM, A. D. 1901.

AND IN THE·FIFTY-FIFTH YEAR OF THE STATE.

J. W. HANNAN v. W. SEIDENTOPF, THOMAS MALONEY *et al.*,
Appellants.

CHARLES R. HANNAN, Receiver, v. SAME Defendants, Appellants.

**Foreclosure Sale:** INNOCENT PURCHASER: *Holder of quitclaim.*
Land worth $4,000 was sold at a foreclosure. The purchaser
failed to record his deed and the former owners transferred
it by quitclaim to G. who conveyed it to M. on the following
day, by warranty deed. The deed to G. stated that it was
given in consideration of $1 and other valuable consideration,
and that the grantor made no representations as to the title,
other than those contained in the deed. G. paid for the land
with 25,000 shares of mining stock, for which he had paid $75,
and he sold the land to M. for $440, and it was purchased by
the latter without seeing it or obtaining an abstract of title.
*Held*, in an action by the foreclosure purchaser to recover the
land, that the evidence is not sufficient to show that M. was
an innocent purchaser thereof.

(658)

INNOCENT PURCHASER:   *Burden of proof.*  The burden of proof of showing that a purchase of land was for value and without knowledge of an outstanding equity is on the purchaser.

GRANTEE IN QUITCLAIM DEED.  A grantee in a quitclaim deed is chargeable with notice of facts rendering the conveyance fraudulent.

GRANTEE FROM QUITCLAIM HOLDER:   *Warranty deed.*   The grantee acquiring real estate, for value, by warranty deed, from one holding it by a quitclaim deed, is not affected with outstanding equities of which he has no notice.

NOTICE BY TENANCY:   Where the purchaser of land at a foreclosure sale notifies tenants thereon that he is the owner, and instructs them to pay the rent to him, and they consent thereto, they become his tenants; and their possession is constructive notice of purchaser's interest therein to a person afterwards acquiring a deed to the land from the former owner.

*Appeal from Pottawattamie District Court.*—HON. WALTER I. SMITH, Judge.

TUESDAY, MAY 14, 1901.

THESE cases were tried together below, and are submitted here on one record. Save that different tracts of land are involved, the facts are identical in the two actions, which are brought in equity to cancel certain conveyances of real estate, and quiet title thereof in plaintiffs. There was a decree for plaintiffs, and defendants appeal.—*Affirmed.*

*S. B. Wadsworth* and *J. J. Shea* for appellants.

*Harl & McCabe* and *Stone & Tinley* for appellee.

WATERMAN, J.—There is a dispute between counsel as to whether the title to this land—200 acres—was originally in William Seidentopf, or his wife, Mary. We are not able to decide this matter from the data given in the record. However, the question is of no importance, in the view we take of the case. Both of those persons are now dead, and Will F. and Ellen M. Seidentopf, their sole heirs, are par-

ties defendant herein. William and Mary Seidentopf executed a mortgage on the lands in dispute to the Kimball-Champ Investment Company, which afterwards became insolvent, and of whose assets ·Charles R. Hannan is receiver. This mortgage was foreclosed. The receiver attended the foreclosure sale to protect the interests of the company, and, by oversight, bought in more land than was intended. He took up the certificates on all he had purchased,—one for 40 acres being in his individual name; and this one he afterwards assigned to his wife, J. W. Hannan, who is plaintiff in the first of these actions. The execution sale under the foreclosure proceedings was had on July 13, 1895. The sheriff's deeds were not recorded until November 16, 1896, about four months after the expiration of full time of redemption. On October 14th, more than a month before those deeds were recorded. Will F. Seidentopf and Ellen M. Hass, nee Seidentopf, sole heirs of the mortgagors, quitclaimed the land to one E. K. Gesford; and, on the next day after receiving his deed, Gesford, by warranty deed, conveyed to defendant Thomas Maloney. Upon this deed Maloney rests his claim to the land.

Section 3125, of the Code of 1873 is as follows: "The purchaser of real estate at a sale on execution need not place any evidence of his purchase on record until twenty (20) days after the expiration of the full time of redemption. Up to that time the publicity of the proceedings is constructive notice of the rights of the purchaser." Plaintiffs were the owners of this land after the expiration of that 20 days, holding under titles, the evidence of which was not properly recorded. If Maloney can succeed here, it is on the ground that, having purchased in good faith and without notice, his equities are superior. There was a manifest fraud on the part of Will F. Seidentopf and his sister in thus selling or pretending to sell something they did not own, and there was evidence offered on the part of plaintiff tending to show at least constructive knowledge of this fraud on the part of both Gesford and Maloney.

In our review of the testimony, we shall comment upon such facts, only, as are not in dispute between counsel. In the deed to Gesford was this unusual provision: "The grantee herein, accepting this quitclaim deed from grantors acknowledges and agrees that no representation as to the character of the land or the title thereto was made, as herein stated." The consideration named in the deed was $1 "and other valuable consideration." Maloney was charged with knowledge of the recitals in this deed. Knowing of this masked consideration, and of the doubt thrown upon the title by Gesford's grantors in the provision above set out, we think Maloney was put upon inquiry. Gesford paid for the land with 25,000 shares of stock in a Colorado mining company, the value of which he will not attempt to give. Some idea of its worth may be gained from the facts that Maloney became the owner of 100,000 shares for $300, and Gesford, who owned 800,000 shares, was in such financial straits that he had to sell this land, worth about $4,000, to Maloney for $440, in order to raise money to pay a small hotel bill. Maloney bought without seeing or knowing the land, and without having the title examined. Any inquiry or investigation would have disclosed plaintiffs' rights. In *Hume v. Franzen,* 73 Iowa, 26, the defendant claimed title under a purchase from one Long of 520 acres of land, worth about $5 per acre. The deed to Long expressed a consideration of only $60, and this court held that Franzen was put upon inquiry by the mere inadequacy of the consideration expressed in the deed to his grantor. We need not go so far as that in this case. Besides the named consideration, there was the other provision in the deed, casting doubt upon the title of Gesford's grantors, to put Maloney on his guard. Unless he willfully refused to give heed, it was of a nature to rouse his suspicion, and induce him to investigate the title. Certainly, with the burden upon him to prove his good faith,

as we shall later see it was, it cannot be said, in the face of these facts, that he has made out a case. Gesford, taking title by quitclaim deed, was not an innocent purchaser, but is charged with notice of plaintiffs' equities. *Bradley v. Cole,* 67 Iowa, 650; *Steele v. Bank,* 79 Iowa, 339. But the conveyance from Gesford to Maloney was a warranty deed, and the rule is that one who purchases by warranty deed, for value, from the grantee in a quitclaim, is not affected by outstanding equities of which he had no notice. *Huber v. Bossart,* 70 Iowa, 718; *Raymond v. Morrison,* 59 Iowa, 371. The burden of proof was upon Maloney to show that he was a purchaser for value, without notice. *Nolan v. Grant,* 53 Iowa, 392; *Hume v. Franzen, supra.* Not only does Maloney fail to sustain this burden, but we think that, looking at the case from another standpoint, it may be said that the undisputed evidence shows that he had constructive notice of the plaintiffs' rights. At the time of the deed to Gesford, and his conveyance to Maloney, the land was in posssesion of tenants, and had been for some time previous. These tenants had been notified by Hannan of the change of title, and told that rent must be paid to him and his wife, to which, so far as appears, they tacitly assented. From this time these occupants became tenants of the Hannans. Now, possession of the tenant of real estate is constructive notice of the landlord's title. *Dickey v. Lyon,* 19 Iowa, 544. This case gives the subject full consideration, both upon reason and authority, and the conclusion arrived at is that possession by a tenant is constructive notice of something more than the tenant's rights; that it is notice, also, of those of the landlord. See, also, *Nelson v. Wade,* 21 Iowa, 49. It may be said that Maloney did not know, at the time of his purchase, of the possession of these tenants. But it was his duty to know it. He was bound to know not only the rights of those in possession, and, if tenants, the rights of their landlord, but also the fact that such possession was held. Possession would afford but

doubtful security, if it were good only against those who had actual notice of it.    Upon this theory, the undisputed evidence shows that Maloney purchased with constructive notice of plaintiffs' rights, and therefore has no equity which he can successfully assert against the legal titles held by them. We are convinced of the correctness of the judgment entered by the trial court, and it is therefore AFFIRMED.