EDWIN S. MARSTON, Appellant, v. JOHN M. CAT-
TERLIN et al; JOSEPH HODNETT, Appellant.

Division Two, February 2, 1917.

1. **PRAYER AND RELIEF:** Land on an Accounting. A supple-
mental bill whereby plaintiff seeks to have vested in him the title
of certain land, which has been conveyed since suit was begun,
and in which he prays that, if the court should find that the
present record owner is a purchaser in good faith and for value,
so that the plaintiff shall have no right of redemption against
him, the original defendant shall be decreed to account for and
pay over to plaintiff the proceeds of the property so conveyed by
him since the filing of the original petition, is sufficient to entitle
plaintiff to an accounting for the proceeds in the event the court
could not give him the land.

2. **OUTSTANDNG EQUITIES:** Notice: Payment of Existing Mort-
gages. The payment in full by the subsequent grantee of existing
mortgages held by his grantor is convincing proof that the grantee
did not have actual notice of a prior outstanding claim in favor
of plaintiff brought about by said grantor.

3. ———: Constructive Notice: Special Warranty Deed. A pur-
chaser by general warranty, in whose chain of title is a remote
recorded deed which in effect is nothing more than a quit-claim
with a special warranty covenanting against any one who might
claim under the grantor therein, is not thereby, being without
actual notice, chargeable with constructive knowledge of outstand-
ing equities existing at the time the special warranty was made.

4. ———: ———: ———: Grantee Under Quit-Claim. A subse-
quent grantee in a general warranty deed is not prevented from
occupying the position of a bona-fide purchaser, without notice,
merely because some prior conveyance in his chain of title is a
quit-claim or special warranty deed. In such case the general
rule applicable to the grantee in a quit-claim deed, should not be
applied to a grantee in a subsequent warranty deed. [Distinguish-
ing Mason v. Black, 87 Mo. 329, and Freeman v. Moffitt, 119 Mo.
280.]

Appeal from Bates Circuit Court.—*Hon. C. A. Calvird,*
Judge.

REVERSED AND REMANDED (*with directions.*)

*Thomas J. Smith, Bowersock, Hall & Hook* and *Robert B. Fizzell* for appellant Marston.

(1) When the defendant Catterlin acquired the Bates County land by purchase under the foreclosure of the Kerns deed of trust, he became a constructive trustee thereof and held the property for the plaintiff. Marston v. Catterlin, 239 Mo. 390; Eoff v. Irvine, 108 Mo. 383; Cameron v. Lewis, 56 Miss. 82; Winn v. Dillon, 27 Miss. 496; Olson v. Lamb, 56 Neb. 104; Galbraith v. Elder, 8 Watts (Pa.), 81; Henry v. Raiman, 25 Pa. St., 354; Smith v. Brotherline, 62 Pa. St. 461; Ainsworth v. Harding, 22 Idaho, 645; Davis v. Smith, 43 Vt. 269; 39 Cyc. 172. (2) When the defendant Catterlin disposed of the Bates County land, he became liable to account to the plaintiff for all of the proceeds of the transaction received by him. 4 Sedgwick on Damages (9 Ed.), sec. 1256h; Perry on Trusts and Trustees (6 Ed.), secs. 429, 430, 844; Pettit v. Carpenter, 86 Mo. App. 452; Whittle v. Vanderbilt M. & M. Co., 83 Fed. 48; Linnell v. Lyford, 72 Me. 280; Cheshire v. Cheshire, 37 N. C. 569. There is no distinction between express and constructive trustees in this regard. Cheshire v. Cheshire, 37 N. C. 569; Clapp v. Vatcher, 9 Cal. App. 462; Pettit v. Carpenter, 86 Mo. App. 452. (3) The right of the plaintiff to compel the defendant Catterlin to account for the proceeds of his sale of the Bates County land does not depend upon whether or not the defendant Hodnett purchased the land with notice of the present litigation. The plaintiff may elect to hold the defendant Catterlin to account. Oliver v. Pratt, 3 How. (U. S.) 401; Parker v. Straat, 39 Mo. App. 626. (4) No notice of *lis pendens* having been filed before the defendant Hodnett purchased the Bates County land from the record owner, Hodnett did not have constructive notice of this litigation. Sec. 8211, R. S. 1909; Steele v. Robertson, 75 Ark. 228; Pennington v. Martin, 146 Ind. 635; Trapp v. Bailey, 152 Ky. 369; Perkins v. Ogilvie, 140 Ky. 412; White v. Manning, 26 Ky. L. Rep. 887; St. Ry. Co. v. Detroit, 124 Mich. 449; McKenzie v. Fellows, 97 Miss. 31; Gilman v. Carpenter, 22 S. D. 23; Easley v. Barksdale, 75 Va. 274; DeCamp v. Carnahan, 26

W. Va. 839; Smith v. Gale, 144 U. S. 509; Glass v. Stark, 156 Wis. 21.

*C. A. Denton* for appellant Hodnett.

(1) The record title that defendant Hodnett purchased under was a complete chain, each link of which was in effect a warranty deed. The deed from Catterlin to Lyons dated September 3, 1904, and recorded the same day, as shown by the record, contained in the granting clause the words "grant, bargain and sell, convey and confirm." There were no words in the *habendum* clause specifically limiting the said words in the granting clause. Therefore it was a warranty deed and imparted no notice of any equitable defects not of record, that might be against the title to the land involved in this suit. Sec. 2793, R. S. 1909; Tracy v. Greffett, 54 Mo. App. 564; Alexander v. Schreiber, 10 Mo. 460; Collider v. Gambles, 10 Mo. 471; Miller v. Bayless, 101 Mo. App. 487, 194 Mo. 630. (2) Defendant Hodnett had a right to rely upon the covenants of general warranty in the deed from Catterlin to Lyons, as shown by the record in the office of the Recorder of Deeds. Therefore, although the words "grant, bargain and sell, convey and confirm" in the said deed as copied were not in the original deed, having been by mistake so copied on the records, Hodnett had the right to rely upon the records regardless of whether it was a true copy of the original. Terrell v. Andrew County, 44 Mo. 312; White v. Lumber Co., 240 Mo. 13; Ritchie v. Griffith, 12 L. R. A. 384, 22 Am. St. 155; Troyer v. Wood, 96 Mo. 478. (3) The only equitable rights that existed in favor of the plaintiff as found by this court when this case was here before that estopped Catterlin from holding the title to the land in question arose out of Catterlin's acts. In the so called special warranty deed of Catterlin to Lyons, even though it should be held that defendant Hodnett took his title under the conditions of the said deed regardless of the copy as recorded, Catterlin covenanted and warranted against his acts, as will be noted on an examination of the *habendum* clause. Duffy v. Sharp, 73 Mo. App. 316; 11 Cyc. 1070; Oak Dale v. Fagen, 63 N.

W. 456; Jenks v. Ward, 45 Mass. 404; Mitchell v. Warner, 5 Conn. 527.

*Silvers & Silvers* for respondent.

(1) Plaintiff Marston sued for the land; and cannot recover its value, or the proceeds thereof. 15 Cyc. 262; McMurray v. St. Louis, 138 Mo. 618; Nanson v. Jacob, 93 Mo. 346; Donnelly v. Trust Co., 339 Mo. 370; Hector v. Mann, 225 Mo. 248. (2) Where, as in this case, plaintiff could elect as to remedies, and sue either, (a) for the land, (b) for its value, or (c) for the proceeds arising from its sale, he is bound by his election when he sued for the land itself. Nanson v. Jacobs, 93 Mo. 346. (3) Plaintiff having sued for the land and recovered judgment therefor, has no just cause for appeal. He only asked for the value of the land, in case the court found that it has been placed beyond his reach. (4) Hodnett is in privity with Catterlin as to the land in controversy, claiming through him, and is bound by the judgment of this court which fixed Catterlin's interest in this land. Cooley v. Warren, 53 Mo. 169; Perkins v. Goddin, 11 Mo. App. 443; Henry v. Woods, 77 Mo. 277; Carthage v. Wesner, 116 Mo. App. 121; Mason v. Summers, 124 Mo. App. 174; Litchfield v. Goodnow, 123 U. S. 549; 24 Am. & Eng. Ency. Law, p. 746; Greenleaf, Ev., 523. (5) Catterlin having only a part interest in the land in controversy, he could convey only what he had, and Hodnett could and did get through mesne conveyances from Catterlin only this part interest. Ridgeway v. Holliday, 59 Mo. 455; Bogy v. Shoab, 13 Mo. 380; Craig v. Zimmerman, 87 Mo. 475. (6) The deed from Catterlin to Lyons, was a special warranty, and equivalent to a quit-claim deed only. Mann v. Best, 62 Mo. 497; Oliver v. Pyatt, 3 How. 333; Brown v. Jackson, 3 How. 449; Freeman v. Moffitt, 119 Mo. 306. (7) Hodnett is charged with notice of everything recited in the deeds in his chain of title. Freeman v. Moffitt, 119 Mo. 280. (8) Hodnett who claims under or through quit claim deeds held his interest subject to the equities in favor of Marston, Marston's equities in the land not being subject to registration under our law pertaining to the registration of conveyances.

Hendrick v. Calloway, 211 Mo. 563. (9) Hodnett having bought property in litigation at the time of his purchase, takes subject to the result of such litigation. 25 Cyc. 1450; Tice v. Hamilton, 188 Mo. 302; Carr v. Gates, 96 Mo. 274; Parker-Washington Co. v. Clinton, 155 Mo. App. 386. (10) There appeared also in the record of title a recitation that the trust deed given to the New England Loan & Trust Company was a first lien on the property. This was notice to Hodnett, and taken with the circumstance that this $1950 trust deed had been foreclosed and the land sold to Marston was sufficient notice to Hodnett to put him on enquiry. Hodnett who traded for the Catterlin interest, had an abstract disclosing to him the seven quitclaim deeds in his chain of title, and the special warranty deed shown on the abstract. This last deed was sufficient to put a reasonable man on guard. And more especially an attorney who knows the significance of such an instrument.

WILLIAMS, J.—This is a proceeding by a supplemental bill to have the title to certain land decreed to be in the plaintiff or, if the land should be found to be beyond the reach of the court, then to have the defendant Catterlin account to the plaintiff for the proceeds of the sale of said land. This is the second appeal in the case. The first appeal is reported in the 239th Missouri Report, at page 390. The opinion in that case should be read in connection with this opinion in order to have a correct understanding of the facts. Upon the first appeal, this court reversed the judgment of the trial court and held that the plaintiff should be vested with the title to the real estate in question. Defendant Hodnett was not a party to the original suit. Before final judgment was had upon the first trial, in the trial court, defendant Catterlin conveyed the land in suit, and when the mandate was returned to the trial court this supplemental bill was filed by plaintiff which brought in Joseph Hodnett as an additional defendant. Hodnett was the record owner of the land.

Trial was had in the circuit court of Bates County. The trial court denied plaintiff's right to recover from Catterlin the proceeds of the sale of said land by him, but

found that plaintiff was entitled to recover the land from defendant Hodnett, upon the payment to said Hodnett of the sum of $348.10. From this judgment both the plaintiff and defendant Hodnett duly perfected an appeal to this court.

The supplemental petition, after stating the facts embraced in the first appeal, alleges that after the filing of the original petition and on the third day of September, 1904, defendant Catterlin conveyed the land to Lyman Lyons and that on the same day said Lyons conveyed the premises to Ray Wolfe; that on November 18, 1904, said Wolfe conveyed said premises to Ralph Earhart; that on January 23, 1905, said Earhart conveyed said premises to defendant Joseph Hodnett; that all of said conveyances were without consideration and did not represent bona-fide transactions between the parties, and that the grantees purchased with full notice of the claim of plaintiff, as set up in his original petition in this action. The prayer of the petition asks that all of the said conveyances be canceled and that the title to said real estate be vested and quieted in the plaintiff. The following was also a part of the prayer: "That if upon final hearing of the cause, the court shall find that the defendant Hodnett is a purchaser in good faith and for value of said property so that the said plaintiff shall have no right of redemption against him, said defendant Catterlin shall be decreed to account for and pay over to the plaintiff the proceeds of the said property so conveyed by him since the filing of the original petition herein, in addition to the rents and profits from said property." This was followed by a plea for general relief.

The separate answer of defendant Hodnett stated that he purchased the property in January, 1905, for a valuable consideration, from one Earhart, the record owner thereof. Said separate answer also contained a general denial of the allegations of the supplemental bill.

The separate answer of defendant Catterlin pleads the judgment of the Supreme Court on the former appeal in this case, wherein it was held that plaintiff was entitled to the land upon paying said Catterlin said redemption

money. The separate answer further alleges that Catterlin has sold all his right, title and interest in said land and now has no further interest therein except certain deed of trust liens thereon given him by purchasers of the land. He prays that the court ascertain the amount of money which the plaintiff ought to pay under the former ruling of the Supreme Court and asks that he have judgment for that amount against the plaintiff.

The evidence tends to show that on September 3, 1904, and while this suit was pending on the original petition, in the circuit court of Bates County, the defendant Catterlin conveyed the land in suit, by special warranty deed, to one Lyons. However, this deed from Catterlin to Lyons, as recorded by the Recorder of Deeds, appears upon the records in the Recorder's office, in effect at least, as a general warranty deed. Thereafter, and on the same day, said Lyons executed a deed of trust on said land to secure a note for twelve hundred dollars, payable to said Catterlin, and, thereafter, and on the same day, by warranty deed, conveyed the property to one Wolfe. It appears that neither Lyons nor Wolfe paid anything for this property, but acted merely as accomodation holders of the title for said Catterlin. On November 18, 1904, said Wolfe, by warranty deed, conveyed the land to one Earhart, subject to this deed of trust for twelve hundred dollars. On November 25, 1904, said Earhart executed a second deed of trust on said land to secure a note for $250, payable to said Catterlin. There was some evidence tending to show that the deal with Earhart was between defendant Catterlin and Earhart and that in exchange for the land involved in this suit, which was then owned by Catterlin, Earhart, through mesne conveyances, conveyed to defendant Catterlin, three and one-half acres of land in Jackson County, Missouri, which was then subject to a deed of trust for $1670. On January 23, 1905, said Earhart conveyed, by warranty deed, the land involved in this suit to defendant Hodnett, who was then an attorney of Illinois and who had gone to Kansas City for the purpose of selling some oil stock then owned by him. The trade between Hodnett and Earhart was negotiated by Mr. C. B. Rhodes, a real es-

tate dealer of Kansas City. Defendant Hodnett gave one hundred dollars in cash and seven thousand shares of the Hudson Oil and Gas Company stock for the land. There is some evidence that the oil stock proved, afterwards, to be valueless. Defendant Hodnett testified that the oil stock was then worth about thirty cents a share and he considered that he was paying about four thousand dollars for the land involved in this suit. Defendant Hodnett admitted that he examined an abstract of title to this land. On the abstract sheet showing the deed from Catterlin to Lyons the words "special warranty deed" were written. No other or further words describing or defining the deed were used in the abstract. It also appears from the evidence that defendant Hodnett, before he purchased the land from Earhart, talked with defendant Catterlin over a long-distance telephone line from Kansas City to Butler. The witnesses disagree as to what was said in this talk over the telephone. Defendant Catterlin testified that Hodnett asked him why he gave a special warranty deed, and that he replied that the land was in litigation and that the sale under the deed of trust was being questioned. Hodnett testified that he talked to Catterlin to inquire about the character of the land and about the title in general and that Catterlin told him over the 'phone that the title was good. Defendant Hodnett testified that he had no information concerning this litigation at the time that he bought the land. After buying the land he paid to defendant Catterlin the sum of $1920.80. This was the amount of the two mortgages against the property plus interest. This was not all paid at one time, but was paid at several different times until both mortgages were finally paid. It is admitted that no notice of *lis pendens* was ever filed in the cause until 1912, which was long after these conveyances were made. Defendant Catterlin offered evidence showing that the present value of the land was between three and eight dollars an acre; and that the land was less valuable now than when this litigation was first started, due to drainage conditions and overflows on the land.

Both appellant Marston and appellant Hodnett contend that Hodnett purchased the property in good faith

and without notice of the outstanding equity of the plaintiff and that therefore the court erred in decreeing the title out of Hodnett and vesting it in the plaintiff subject to the payment of the redemption money.

Appellant Marston further contends that the court erred in not permitting him to have an accounting against Catterlin for the proceeds received by Catterlin from the sale of the land.

Respondent contends (1) that plaintiff, had he so elected in the first instance, might have recovered against him for the proceeds, yet since he sued to recover the land if such relief were within the power of the court, he thereby elected to pursue that remedy and cannot now complain of the court's action in granting him relief for which he prayed; (2) that Hodnett purchased the property charged with notice of the plaintiff's equity in the land by reason of the fact that Catterlin conveyed the property by special warranty deed.

I. We are of the opinion that plaintiff's supplemental petition is sufficient to entitle him to an accounting for the proceeds in the event it should be found that the court **Relief** could not give him the land. If, on the other hand, the facts should be found sufficient to justify the court's action in vesting the title to the land in plaintiff, then plaintiff should not be now heard to complain, because it would be the exact relief for which his petition prays.

It, therefore, becomes important to first determine whether the court erred in divesting defendant Hodnett of the title.

We do not believe there is sufficient evidence to justify the conclusion that Hodnett had actual notice of plaintiff's claim to this land at the time Hodnett made **Outstanding Equities: Notice.** the purchase. It is true Catterlin testified that he told Hodnett of the pending litigation, before Hodnett bought the land. This is denied by Hodnett. Hodnett's subsequent action in paying Catterlin $1920 to satisfy the two deeds of trust held, by Catterlin against the property is convincing proof, we

think, that Hodnett did not know of the plaintiff's equity at the time of the purchase.

Should it be said that Hodnett is chargeable with constructive knowledge of the outstanding equities? We think not.

It is admitted that statutory notice of *lis pendens* was not filed by plaintiff prior to Hodnett's purchase of the land, so that it cannot be contended that he is chargeable with constructive notice from that source.

The only other source from which constructive notice might come would be from the character of the deed given by Catterlin to Lyons and which lies within Hodnett's chain of title. This deed was in effect nothing more than a quit-claim deed with the special warranty covenanting against anyone who might claim under the grantor.

The general rule in this State is as follows: "A *grantee* in a recorded quit-claim deed for value who has no actual notice holds a good title against a prior unrecorded deed, subject to record, and holds a good title against any equity to which the recording act applies. . . . A quit-claim deed does not bar outstanding equities *not* the subject of record." [Hendricks v. Calloway, 211 Mo. 536, l. c. 563-4, and cases therein cited.]

The same rule is also applicable to a special warranty deed which limits the covenants of warranty against persons claiming to hold under the grantor. [7 R. C. L. 1129; Mann v. Best, 62 Mo. 491, l. c. 497.]

So far as we are aware the application of the rule in this State has been limited to cases wherein the *grantee* in the quit-claim deed was the person claiming to be the purchaser in good faith. In the case at bar defendant Hodnett holds under a general warranty deed and the two deeds in the chain of title immediately preceding defendant's deed were also warranty deeds. The special warranty deed was therefore remote from the transaction by which Hodnett acquired title. Should the general rule applicable to the *grantee* in a quit-claim deed be applied to a grantee in a subsequent warranty deed?

The great weight of authority upon what appears to us to be the sounder logic is to the effect that a subsequent

grantee in a general warranty deed is not prevented from occupying the position of a bona-fide purchaser, without notice, merely because some prior conveyance in his chain of title is a quit-claim or special warranty deed.

The rule here applicable is correctly and tersely stated in 39 Cyc. 1696 as follows: "Even in those courts in which the rule prevails that one who takes under a quit-claim deed cannot be a bona-fide purchaser, it is limited to the grantee in such a deed, and not extended to those cases in which a quit-claim is only a prior conveyance in the chain of title." To the same effect are the following authorities: Stanley v. Schwalby, 162 U. S. 255, l. c. 277; 23 Am. & Eng. Ency. Law, 512; Otis v. Kennedy, 107 Mich. 312; Rich v. Downs, 81 Kan. 43; Hannan v. Seidentopf, 113 Iowa, 658; Meikel v. Borders, 129 Ind. 529.

Nothing herein stated conflicts with the decision announced in the case of Mason v. Black, 87 Mo. 329, l. c. 342-4. The decision in that case turned upon the proposition that the quit-claim deed, forming a prior link in the chain of title, contained a *peculiar* clause sufficient within itself to put the subsequent purchaser under a warranty deed upon inquiry. The case is therefore clearly distinguishable from the case at bar. Neither does our holding conflict wtih the case of Freeman v. Moffitt, 119 Mo. 280, l. c. 302, cited by respondent. What was said in the Moffitt case refers merely to the prior special warranty as one fact to be considered with other circumstances tending to prove notice, and cannot be said to be in any manner an attempt to state a rule that subsequent purchasers could not be bona-fide purchasers merely because a prior quit-claim or special warranty deed appeared in the chain of title.

We do not feel that the facts are sufficiently developed in this record to justify us in attempting to settle the question of accounting between plaintiff and defendant Catterlin, but are of the opinion that that question can be more accurately adjusted by the trial court upon a new trial.

The judgment. is reversed and the cause remanded with directions to the trial court to dismiss the bill as to

defendant Hodnett, and to proceed with a new trial on the question of an accounting as between the plaintiff and defendant Catterlin. And to this end either party may, if he so desires, so amend the pleadings as to more clearly draw the issue upon that question. All concur.