ELIZABETH A. TAYLOR, Appellant, v. E. A. LINDENMANN et al., Appellees.

No. 40692.

FEBRUARY 17, 1931.

 .

*Klay & Klay,* for appellant.

*Van Oosterhout & Kolyn,* for E. A. Lindenmann and Clara Lindenmann, appellees.

DE GRAFF, J.—In the year 1919, and for several years prior thereto, Francis Taylor was the owner of the north 120 acres of the NW¼ Section 27-95-46, Sioux County, Iowa, and was also the owner of the adjoining SW¼ Section 22-95-46, located to the north of the 120 acres above described. At the time of the commencement of the instant action, on December 10, 1929, plaintiff was the title holder of the SW¼ Section 22-95-46, under the last will and testament of her husband, Francis Taylor, who died March 30, 1927.

On March 29, 1911, Francis Taylor and Elizabeth Taylor, his wife, executed and delivered a warranty deed, with the usual covenants, conveying to Sioux County, Iowa, a parcel of land four rods wide, for a public road. This parcel of land was described in the deed as follows:

"Commencing at a point 20 rods east of the northwest corner of Section 27-95-46, 30 rods in a southeasterly direction to a point 15 rods south from the north line of said section; thence 15 rods due east, thence 30 rods in a northeasterly direction to a point of intersection with said section line."

This strip of road contained two acres. The attached drawing will prove helpful in understanding the parcels of land involved on this appeal.

ELIZABETH TAYLOR

$SW\frac{1}{4}$ 22-95-46

PASTURE

FENCE

4.5 A

COUNTY

ROAD

113.5 a
South of new road

N 120 a of NW$\frac{1}{4}$ Sec 27-95-46

E.A. LINDENMANN

It may be observed from the aforesaid drawing that the road containing the two acres cut off 4.5 acres from the north 120 acres of the NW¼ Section 27-95-46, which left 113.5 acres south of the public road. It may further be stated that the original fence on the south side of the SW¼ of Section 22 was changed to the north side of the new road, and the 4.5 acres were fenced in with the SW¼ of Section 22, and have been in continuous possession of Francis Taylor and his wife from 1913 to the present time.

On May 3, 1918, Francis Taylor sold the 113.5 acres south of the road, under contract, to one Nicholas Walraven. Upon the trial, Walraven testified that he bought the 113.5 acres lying south of the new road, and the part of the description lying north of the road was not included in his purchase. He further testified that he sold this real estate (113.5 acres) to Neal Mouw, and assigned to Mouw the real estate contract of purchase. Walraven did not receive a deed from the Taylors under the contract, but, on October 2, 1919, Francis Taylor and Elizabeth A. Taylor, husband and wife, conveyed to Neal Mouw and Albert A. Mouw the N½ of the NW¼ and the N½ S½ NW¼ Section 27-95-46 West of the 5th P. M., except the strip of land deeded in 1911 to Sioux County for highway purposes, as hereinbefore described. Mouw had possession and ownership of the Walraven contract of purchase, and consequently the grantee Mouw knew that the Taylors were conveying to him 113.5 acres of the 120 acres.

On February 19, 1920, the Mouws, with their respective wives, executed and delivered, in consideration of $35,185, a warranty deed to Henry Mouw, conveying the real estate heretofore described, and excepting the strip of land deeded to Sioux County for highway purposes, as hereinbefore described. Henry Mouw bought the land in question under a contract from Henry Van Roekel. Henry Mouw testified:

"I remember that there was 113.5 acres in this particular tract, and I sold it to Herman Renken. I do not remember whether we had a new contract for that sale. The consideration in the sale to Renken was computed at 113.5 acres. I examined this land at the time I bought it, and was familiar with the road lying along the north side, and saw the condition of the fence and the road and all, with reference to this land."

On February 23, 1920, Henry Mouw and his wife Hannah executed and delivered a warranty deed, in consideration of $40,292, to Herman Renken, conveying to him the parcel of real estate heretofore described, and excepting the strip of land four rods wide for highway purposes, as heretofore described. This deed contained the usual covenants as contained in the former deeds, with the exception of a first mortgage of $15,000 and a second mortgage of $10,000.

On May 12, 1919, Herman Renken entered into a contract with E. A. Lindenmann to sell and convey the "north three fourths of the northwest quarter of Section 27, Township 95 north, of Range 46 West of the 5th P. M., being in Sioux County, Iowa, containing according to the United States Survey, 113.5 acres, for the sum of $42,462." It appears, therefore, that, when Lindenmann received his warranty deed from Renken, he knew he was buying 113.5 acres. One G. C. Knowlton was the real estate agent who sold the land for Henry Mouw to Mr. Renken. Knowlton testified upon this trial:

"I showed this land to E. A. Lindenmann, and we were on the road at the north end of the land. I remember telling him later that the land I was trying to sell contained 113.5 acres, and the 120 was short that 6.5 acres, because the road cut it, leaving 113.5 acres south of the road. I did not sell him that part of the NW¼ of Section 27 lying north of the road. I knew Mr. Taylor was the owner of that."

Lindenmann himself on the witness stand testified:

"My contract with Renken called for 113.5 acres. I knew the road curved through this land. I remember that there was a fence on the section line from both ends. The fence followed the road at the time I bought it. I never demanded possession from anybody for this 4.5 acres lying north of the road, nor did I rent it or put any fence on it, nor did any of my tenants. Nor was·this 4.5 acres ever fenced off by itself. My title or right to the 4.5 acres north of the road was never brought to my attention until I went to renew the mortgage, a year ago this spring. I did not discover it until the fore part of March, 1929, when we were negotiating about a new loan."

It is shown that, when Lindenmann purchased the Taylor land from Renken, he paid for it on the basis of 113.5 acres. He admits it, and the mathematics prove it. The Taylors were always in undisputed possession of the disputed tract, and no grantee ever made demand therefor. The plea of *bona fides* is an affirmative plea, and as a defense, must be sustained by a purchaser by competent proof. *Hannan v. Seidentopf*, 113 Iowa 658. The three primary factors to constitute a bona-fide purchaser for value are (1) title, (2) possession, and (3) want of notice, either actual or constructive. Defendant Lindenmann has not met the tests.

Lindenmann alleged in his answer that the plaintiff, Elizabeth Taylor, is estopped to make her instant claim, by reason of a conversation which Lindenmann had with Mrs. Taylor just prior to Lindenmann's payment of the $15,000 first mortgage on the land. There is no question but that these two people had a conversation, but Mrs. Taylor denies the conversation as recited by Lindenmann. It is obvious from the evidence that Mrs. Taylor did not estop herself. Lindenmann testified that "she [Mrs. Taylor] seemed to be perfectly willing that I should have possession of it [4.5 acres]." He further testified:

"I think it would have been a factor in my determining in cleaning up of that mortgaged indebtedness. I asked her in regard to putting a fence over there on the section line, so I could have possession of it [the disputed tract] and use it as pasture or hay ground, or whether my son, who was on her place on the

quarter section, would have another year and pay me rent on it; and she said, 'Go and see Albert.' "

Lindenmann did go to see Albert. Albert testified that the piece of ground (4.5 acres) north of the road is used for pasture, and "my pasture fence is right next to the road. It follows the contour of the road, and it has remained that way since I have been there. I have always used it for pasture. I paid rent to nobody except Mrs. Taylor. It is not on a basis of a certain amount per acres, and nobody has made any demand for rent on me except Mrs. Taylor." Mrs. Taylor's son testified that the county laid out the road south of this quarter (SW¼ Section 22-95-46) in about 1911, and "father was the owner of the 120 acres lying south of that road, and when the road was relocated, the fence was reconstructed on the north edge of the road in its new contour."

The record further discloses that the 4.5 acres in dispute were assessed in 1925 to 1927 and in 1927 to and paid by Francis Taylor, and that Lindenmann's name was inserted on the tax books in 1928, and that the 4.5 acres were assessed and paid by Lindenmann on March 30, 1929. Elizabeth Taylor was not responsible for this change of names on the tax books, and upon this trial, she tendered to Lindenmann the amount of taxes paid by Lindenmann for 1928. No assessments on the disputed tract (4.5 acres) were made prior to 1925.

The instant action is triable *de novo*, and "in this court the facts, as well as the law of the case, are again reviewed and re-adjudicated." *Pierce v. Wilson*, 2 Iowa (Clarke) 20, 26. It is here tried as if this court had original jurisdiction, regardless of the decision of the court below, or the basis upon which the decision rests. *Austin & Spicer v. Carpenter*, 2 G. Greene 131.

The primary objective of this case is the quieting of title to the disputed tract (4.5 acres), and this being true, we have no occasion to predicate our conclusion upon mutual mistake, except as to the deed from the Taylors to their grantee. It is clear that there was a mistake in this instance, and it was a mutual mistake. An instrument will be reformed on the ground of mutual mistake only when the alleged mistake is supported by evidence that is clear, satisfactory, and

convincing. *Haugh v. Lanz,* 187 Iowa 841; *Noble v. Trump,* 174 Iowa 320; *Wormer v. Gilchrist,* 210 Iowa 463. We recognize the rule that, to justify a reformation of a written instrument, the party asking for reformation must be free from negligence. *Galva First Nat. Bank v. Reed,* 205 Iowa 7. The Taylors were free from negligence. The plaintiff, Elizabeth Taylor, was not a party to any contract or deed involving the land in question except with the original purchasers (the Mouws). Therefore, there was no mutuality of contract between Elizabeth Taylor and the subsequent grantees. No question is raised as to the right of the plaintiff to commence this action. She had a right to commence it and to have the title quieted in her as to the 4.5 acres. Although the warranty deeds offered in evidence do not purport to state the quantum of acreage, yet it is conclusively shown that the grantees named in the successive contracts and deeds, including the defendant Lindenmann, had actual notice that but 113.5 acres were conveyed or intended to be conveyed. There is no quarrel with the general rule that quantity must yield to description. See *Ufford v. Wilkins,* 33 Iowa 110. In the *Ufford* case, however, as said in the opinion: ''No question of notice is involved.'' It may be said, under the instant record, that the grantees, including the last grantee, defendant Lindenmann, were not bona-fide purchasers for value of any acreage in excess of 113.5 acres, nor were any of said grantees, including Lindenmann, in possession of a greater area than 113.5 acres. The plaintiff is entitled to reformation as to her grantee, Mouw, and to have the title to the 4.5 acres quieted in her as to the subsequent grantees. Wherefore, the decree entered is—*Reversed.*

FAVILLE, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.